KNOWLES et al. v. WAR DAMAGE
CORPORATION.

No. 9658.

United States Court of Appeals
District of Columbia Circuit.

Argued May 3, 1948.

Decided Oct. 4, 1948.

Writ of Certiorari Denied Feb. 14, 1949.

See 69 S.Ct. 604.

16

Mr. Philip W. Amram, of Washington, D. C., with whom Mr. Ward M. French, of Washington, D. C., was on the brief, for appellants.

Mr. Edward H. Hickey, Special Assistant to the Attorney General, with whom Mr. George Morris Fay, United States Attorney, Mr. Ellis Lyons, Attorney, Department of Justice, and Mr. Richard E. Guggenheim, Attorney, Department of Justice, were on the brief for appellee. Mr. Herbert A. Bergson, Acting Assistant Attorney General, entered an appearance for appellee.

Before PRETTYMAN and PROCTOR, Circuit Judges, and SCHWEINHAUT, District Judge, sitting by designation.

PRETTYMAN, Circuit Judge.

Appellants were plaintiffs in a civil action in the District Court, brought against the defendant Corporation to require it to file an accounting of insurance premiums received by it and of its expenses, and to refund to its policyholders the net premiums now in its possession. Plaintiffs said that they brought the suit on behalf of themselves and all other policyholders, exceeding six million in number. Upon motion of the defendant, the District Court dismissed the action.

The defendant Corporation was organized and is wholly owned by the Reconstruction Finance Corporation, pursuant to an Act of Congress of January 22, 1932, as amended in 1942.[1] The Reconstruction Finance Corporation was authorized to supply funds up to $1,000,000,000, and the defendant War Damage Corporation was authorized to provide property owners with insurance against damage to property by enemy action, upon the payment of

---

[1] 47 Stat. 5, as amended, 56 Stat. 175, 15 U.S.C.A. § 601 et seq.

premiums and upon terms to be established by War Damage Corporation and approved by the Secretary of Commerce. "Rules, Regulations and Rates" were promulgated, and contracts of insurance were offered for sale and were sold at an annual rate of ten cents per hundred dollars of value. Some $300,000,000 was collected as premiums, and the losses were infinitesimal. The war being over, the existence of War Damage Corporation is about to end, and its funds are about to be paid over to the Treasury of the United States.

The plaintiffs say that the net premiums of War Damage Corporation, all losses having been paid, are the equitable property of its policyholders as refundable unearned excess premiums. They ask that an accounting be had and the net fund be paid to the policyholders in proportion to their respective interests.

Plaintiffs' policy with War Damage Corporation was on a value of $9,000, and the annual premium was $9.00. It is asserted by defendant-appellee, and not denied by plaintiff-appellants, that the total of plaintiffs' own premium payments involved is not more than $18.00.

The case is in two main parts. The first relates to the jurisdiction of the District Court, and the second relates to the meaning and effect of the Act of Congress by which War Damage Corporation was created and under which it operated.

The appellee Corporation says that the District Court had no jurisdiction of this action because the amount involved is only $18.00 or less and the statute provides that the Municipal Court shall have exclusive jurisdiction of civil actions brought in the District of Columbia where the amount of the claim is less than $3,000. This seems plain enough, because the statute does say just that. Appellants answer, however, (1) that the amount claimed is really $300,000,000, because this is a class action on behalf of all policyholders, and (2) that this is a suit against the United States and the United States cannot be sued in the Municipal Court.

The first phase of the question of jurisdiction is whether the amount here involved is $18.00 (or less) or is $300,000,000. The answer depends upon whether the claim of the plaintiffs must stand alone for jurisdictional purposes or whether all the claims of all the policyholders can be aggregated to determine jurisdiction. Appellants take the latter view, on the ground that this is a class action.

■ Class actions are presently provided for by Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C.A., but they did not originate there. It has long been recognized in equity that where the persons having a cause of action are so numerous as to make it highly impracticable to join them all as parties in one action, and where all have common and undivided interests in the subject matter, suit by a representative member or members of such group is permitted.[2] All members of the class were bound by the judgment in such an action. It is spoken of as a "true class action".

■ For purposes of satisfying the $3,000 limitation on federal District Court jurisdiction, the sum at stake in a true class action is the total amount involved, i. e., the aggregate of all of the individual claims.[3] This is a clear exception to the general rule that where separate persons join, or are joined, as plaintiffs in a federal court, each must aver, and be prepared to prove, that at least $3,000 is involved in his own claim.[4] And only those making such a showing can remain in the action.[5]

■ This true class action is embodied in Rule 23(a) (1):

"(a) Representation. If persons constituting a class are so numerous as to make

[2] Thompson v. Deal, 1937, 67 App.D.C. 327, 332, 92 F.2d 478, 483; Gibbs v. Buck, 1939, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111.

[3] Pinel v. Pinel, 1916, 240 U.S. 594, 596, 36 S.Ct. 416, 60 L.Ed. 817, 818; Ackman v. Northern States Contracting Co., 6 Cir., 1940, 110 F.2d 774.

[4] This court had occasion recently to affirm a decision of the D. C. Municipal Court of Appeals, wherein that court had ruled that the Municipal Court had jurisdiction of a joinder of two separate causes, each of which sought $3,000 in damages. Taylor v. Yellow Cab Co., 1948, 83 U.S.App.D.C. 399, 169 F.2d 299.

[5] Clark v. Paul Gray, Inc., 1939, 306 U. S. 583, 590, 59 S.Ct. 744, 83 L.Ed. 1001.

it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;".

The requisites thus enumerated in the Rule are those theretofore existing in equity practice; claimants too numerous to be brought before any court, adequacy of representation, and a common and undivided interest.[6] There must be a showing of adequate representation of the class, for members of that class are to be bound by the outcome of the action.[7] Issues determined in a true class action are res judicata so far as any member of that class is concerned, even though he never became a party to, or knew of, the class action itself. Factors bearing upon adequacy of representation are various and are not specifically enumerated in the law: It is pertinent to consider whether other members of the class have notice, express or constructive, of the pendency of the action and of its representative character;[8] whether such members desire, or acquiesce in, such representation; whether the number of parties is sufficient as compared to the numerical size of the class.

The foregoing relates to a true class action, but Rule 23 does not stop there; it proceeds to outline a further type of class action:

"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

This type of action is spoken of as a "spurious class action."[9] The members' interests may be several and not interdependent,[10] although the remaining requisites of the true class action must be met. Their joinder is a matter of economy and efficiency on the part of courts and parties—an avoidance of a multiplicity of suits.[11] Courts have possessed the power to afford and have afforded this remedy long before the adoption of the new Federal Rules of Civil Procedure.[12] The joinder was and is a matter of discretion in the trial court.[13] However, both at the earlier date and now, when the interests are separate but a joinder is permitted, each individual claim must equal or exceed $3,000 before the action can be prosecuted in a federal court. When the claims are separate, they cannot be aggregated to surpass this jurisdictional threshold.[14]

Thus it appears that "Representation" in "Class Actions" under Rule 23 is not synonymous with aggregation for jurisdictional purposes. The latter requires a true class action, as we have described it.

[6] Boesenberg v. Chicago Title & Trust Co., 7 Cir., 1942, 128 F.2d 245, 141 A.L.R. 565; Citizens Banking Co. v. Monticello State Bank, 8 Cir., 1944, 143 F.2d 261, 264.

[7] Hansberry v. Lee, 1940, 311 U.S. 32, 44-46, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741.

[8] Weeks v. Bareco Oil Co., 7 Cir., 1941, 125 F.2d 84, 91.

[9] Weeks v. Bareco Oil Co., 125 F.2d at page 89, supra, note 8.

[10] Sturgeon v. Great Lakes Steel Corp., 6 Cir., 1944, 143 F.2d 819, 822.

[11] Weeks v. Bareco Oil Co., 125 F.2d at pages 88, 91, supra, note 8.

[12] Eberhard v. Northwestern Mut. Life Ins. Co., 6 Cir., 1917, 241 F. 353, 356.

[13] Weeks v. Bareco Oil Co., 125 F.2d at page 93, supra, note 8.

[14] Clark v. Paul Gray, Inc., 306 U.S. at pages 588–590, 59 S.Ct. 744, 83 L.Ed. 1001, supra, note 5; Pinel v. Pinel, supra, note 3; Rogers v. Hennepin County, 1916, 239 U.S. 621, 36 S.Ct. 217, 60 L.Ed. 469; Eberhard v. Northwestern Mut. Life Ins. Co., supra, note 12; California Apparel Creators v. Wieder of California, 2 Cir., 1947, 162 F.2d 893, 174 A.L.R. 481, certiorari denied, 1947, 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 78; Thomson v. Gaskill, 1942, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951.

In the present case, there are but two plaintiffs (husband and wife) with but one claim. There can be no aggregation of their claim with those of all other policyholders for jurisdictional purposes, unless the case can be catalogued as a true class action. It cannot be so catalogued for at least two clear reasons. First, *there is no showing that plaintiffs will* adequately represent the class. The numerical factor weighs heavily against them, they being two seeking to represent some 6,000,000; and they show nothing to offset this detriment.[15] Secondly, their right and interest are several from those of any other in the alleged class, being dependent upon their contract of insurance.[16] There can, therefore, be no aggregation of amounts, and plaintiffs fail for not showing that $3,000 is involved.[17] It does not matter that the action might still be designated a class action under Rule 23(a) (2) or (3).

We find ourselves in agreement with the Circuit Court of Appeals for the Seventh Circuit upon the point.[18]

■ We find no merit in appellants' second contention on this point, that the suit is against the United States and, therefore, cannot be brought in the Municipal Court. The War Damage Corporation was created[19] pursuant to Section 5d of the Reconstruction Finance Corporation Act.[20] Its charter[21] provided that it should have power "to sue and be sued in any court of competent jurisdiction", and that it "shall in all other respects be possessed of the privileges and immunities that are conferred upon the Reconstruction Finance Corporation under the Reconstruction Finance Corporation Act, as amended." The Reconstruction Finance Corporation has power "to sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal".[22] Even if the matter were not thus clear upon the face of appellee's charter, it would be governed by Keifer & Keifer v. R. F. C.[23]

■ The foregoing is sufficient to dispose of the pending appeal, but since further proceedings may be had in another court in this jurisdiction upon this claim, and since the point has been so vigorously and exhaustively argued here, we add a further observation. Appellant says that the scheme of the War Damage Corporation insurance was in essence a mutual plan, and that, therefore, the excess of premiums above losses and expenses belongs to the policyholders. It reaches this conclusion by a negative process, failing to find in the Act or its legislative history any evidence that Congress intended the Government to enter upon a profit-making insurance business. The difficulty with that process of reasoning is that nowhere in the Act or in the legis-

[15] Weeks v. Bareco Oil Co., 125 F.2d at pages 91–93, supra, note 8.

[16] Sturgeon v. Great Lakes Steel Corporation, 143 F.2d at page 821, supra, note 10; Robbins v. Western Automobile Ins. Co., 7 Cir., 1924, 4 F.2d 249, certiorari denied, 1925, 268 U.S. 698, 45 S. Ct. 515, 69 L.Ed. 1163; Woods v. Thompson, 7 Cir., 1926, 14 F.2d 951; Andrews v. Equitable Life Assur. Soc., 7 Cir., 1941, 124 F.2d 788, certiorari denied, 1942, 316 U.S. 682, 62 S.Ct. 1270, 86 L.Ed. 1755; Eberhard v. Northwestern Mut. Life Ins. Co., supra, note 12.

[17] Lion Bonding & Surety Co. v. Karatz, 1923, 262 U.S. 77, 85, 86, 43 S.Ct. 480, 67 L.Ed. 871; Fechheimer Bros. Co. v. Barnwasser, 6 Cir., 1945, 146 F.2d 974.

[18] See Matlaw Corporation v. War Damage Corporation, 7 Cir., 1947, 164 F.2d 281, certiorari denied, 1948, 333 U.S. 863, 68 S.Ct. 744.

[19] See Sec. 5g(a) of Reconstruction Finance Corporation Act as added by Sec. 2 of an act of March 27, 1942, 56 Stat. 175, 15 U.S.C.A. § 606b—2.

[20] First sentence of subsection (3) of the fourth paragraph of Sec. 5d of the Reconstruction Finance Corporation Act, as amended by Sec. 3(b) of an act of June 10, 1941, 55 Stat. 249, 15 U.S.C.A. § 606b.

[21] The charter was issued December 13, 1941, 7 Fed.Reg. 2531, and amended as to name March 30, 1942, 7 Fed.Reg. 2532.

[22] Sec. 4 of Act of Jan. 22, 1932, 47 Stat. 6, 15 U.S.C.A. § 604, prior to June 30, 1947; Sec. 3(a) of Act of June 30, 1947, Pub.L.No.132, 80th Cong., 1st Sess., U.S.Code Cong.Serv., 80th Cong., 1st Sess., 1947, p. 210, 15 U.S.C.A. § 603, effective after June 30, 1947.

[23] 1939, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784.

lative history does there appear any evidence that Congress intended or provided that this should be a mutual venture in the sense in which that term is used in insurance law. In form, this was a stock company, the Reconstruction Finance Corporation owning all the stock. In principle, the Congress placed the resources of the Government behind an undertaking to insure property against loss by enemy action during a war, because the private insurance companies would not and could not assume such a burden. There was nothing unconstitutional in affording such protection. In fact, the protection of property in this country against destruction or damage by the enemy was one of the objects of the whole war effort, to which much military, naval and air organization was devoted.

■ These appellants purchased a contract of protection. They received that which they purchased. That the Government which supplied the protection showed no losses charged against the premiums in its accounts, gives appellants no new contract rights. In principle, it might be that part of the war cost of supplying the protection afforded might be charged against these funds. In any event, we find nothing invalid in the act by which Congress directed the appellee to pay its surplus funds into the Treasury of the United States.[24]

Affirmed.

---

[24] Pub.L.No.268, 80th Cong., 1st Sess., Act July 30, 1947, 61 Stat. 574.