KAINZ et al. v. ANHEUSER–BUSCH,
Inc. et al.

No. 10502.

United States Court of Appeals,
Seventh Circuit.

Feb. 14, 1952.

Rehearing Denied March 17, 1952.

Hirsch E. Soble, Leo E. Aronson and J. Henry Aronson, all of Chicago, Ill., for appellants.

Victor E. La Rue, Charles M. Price and Charles B. Mahin, all of Chicago, Ill. (MacLeish, Spray, Price & Underwood, Chicago, Ill., Shepley, Kroeger, Fisse & Ingamells, St. Louis, Mo., of counsel), for appellees.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiffs, constituting three partnerships and one individual separately engaged in operating retail liquor stores in Chicago and suburbs, brought this action in the District Court under Title 15 U.S.C.A. § 15, " as a class action for the benefit of the plaintiffs and all the parties named in plaintiffs' Exhibit 1 attached * * * in pursuance of the provisions of Rule 23(a) (3) of the Federal Rules of Procedure [28 U.S.C.A.]," averring that all these parties and others not specifically named constitute a class so numerous as to make it impractical to bring all of them before the court; that all the persons mentioned in the exhibit have authorized institution and prosecution of the action in their behalf; that plaintiffs will fairly insure adequate representation of all members of the class; that the rights sought to be enforced are several but embrace common questions of law and fact, and that common relief is sought.

Plaintiffs charged further that Anheuser-Busch, Incorporated, designated as primary defendant, has been, for a long period of time, engaged in the production and wholesale distribution of Budweiser beer, which it has shipped from St. Louis, Mis-

souri, to retailers in Illinois; that this product has great consumer appeal and is in wide demand; that the secondary defendants Meech, Jr. and Roselle were, prior to 1947, engaged in a retail beer distributing business in Chicago which they incorporated in May, 1947, under the name of Home Distributing, Incorporated, the remaining secondary defendant; that the secondary defendants have been in direct competition with plaintiffs in the sale of Budweiser beer to the purchasing public since 1939 until the present time; that, during all that period, the primary defendant has sold its beer at wholesale to plaintiffs, including those named in Exhibit 1, and to the secondary defendants, shipping it from St. Louis to the purchasers in Illinois.

Plaintiffs averred further, as facts sustaining their class action, that during all of the period mentioned the primary defendant has discriminated in prices between all members of plaintiffs' class on the one hand and the secondary defendants on the other in the sale of its beer at wholesale and has extended to the secondary defendants discriminatory services and facilities in connection with the sale of its beer not accorded to plaintiffs; that, as a result of the discriminations, the secondary defendants have been able to and did undersell members of the class; that the discriminations have substantially lessened competition, tend to create a monopoly in the line of commerce of primary defendant's beer and to injure, destroy or prevent competition of plaintiffs with the secondary defendants; that such discriminations have been reasonably likely to lessen, injure, destroy or prevent competition; that the secondary defendants have knowingly received the price and service discriminations aforesaid, all in violation of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13, and that, as a result of these practices, members of plaintiffs' class have been injured in their competition and in their respective businesses and damaged in the several sums shown after their names in Exhibit 1. Plaintiffs prayed that defendants be restrained and enjoined from continuing to violate the Act and that judgments enter in favor of the several plaintiffs, the total claims of the named members aggregating some $603,000.

On motion of defendants the court ordered that the complaint be stricken, with leave to one of the partnerships to file an amended complaint stating its claim in separate counts; that the class action be dismissed; that all other plaintiffs named in the complaint be dropped as plaintiffs in this cause but have leave to file separate amended complaints setting forth their separate claims, within 30 days. Thereupon plaintiffs elected not to proceed further but rather to stand upon the complaint as filed. The court then ordered the action dismissed for non-compliance with its order. This appeal followed.

Plaintiffs contend here that the court erred in granting the joint and several motions mentioned and in entering judgment of dismissal against them.

Under Title 15, 15 U.S.C.A. § 15 any person injured in his business or property by reason of anything forbidden in the anti-trust laws may sue and recover threefold actual damages sustained. Under this section it is obviously the duty of the plaintiff to aver and prove that he has been injured in his business or property and that this injury was caused by acts forbidden by the anti-trust laws. In the present case plaintiffs, recognizing this burden, averred that they had been injured in their respective businesses by violations of three provisions of Section 13: 1) discrimination in prices between them and other purchasers from the primary defendant, the effect of which was to lessen, injure or prevent competition; 2) discrimination in favor of other purchasers as against plaintiffs in furnishing services or facilities connected with the sale of the commodity purchased upon terms not accorded to plaintiff on proportionately equal terms; 3) as against the secondary defendants, that they knowingly induced or received discriminations in price from the primary defendant. Thus the averments cover the specific elements which the statute prescribes as essentials of the cause of action. Beegle v. Thomson, 7 Cir., 138 F.2d 875.

■ We are concerned here, however, only with procedural questions. Federal Civil Procedure Rule 23(a), after providing that, if persons constituting a class are so numerous as to make it impractical to bring them all before the court, such of them as will fairly insure the adequate representation of all may sue on behalf of all, proceeds to define three species of class actions. Subparagraph (1) includes actions where the right sought to be enforced is joint or common or derivative, in the sense that the owner of a primary right refuses to enforce the right and a member of the class thereby becomes entitled to enforce it, actions commonly spoken of as true class actions. The second species, (subparagraph (2)) commonly known as a hybrid class action includes suits where the rights sought to be enforced are several and the object is to adjudicate separate claims against specific property. The third species, (subparagraph (3)) frequently spoken of as a spurious class action, includes suits where the rights sought to be enforced are several and there is a common question of law or fact affecting such several rights and a common relief is sought. It is obvious, therefore, that the requisites to the maintenance of any such suit include these factors: 1), the parties must be so numerous as to make it impractical to bring them all before the court; 2), the plaintiffs must adequately represent the class, and 3), there must be some community of interest. The true class action, invented in equity, includes cases where the right to enforce is joint, common or derivative. · Pentland v. Dravo Corp., 3 Cir., 152 F.2d 851. Typical examples are Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111; Buck v. Gallagher, ·307 U.S. 95, 59 S.Ct. 740, 83 L.Ed. 1128; Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 4 Cir., 148 F. 2d 403; Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Boesenberg v. Chicago Title & Trust Co., 7 Cir., 128 F.2d 245, 141 A.L.R. 565. From the wording of the rule itself and repeated judicial pronouncements concerning it, it is obvious that the present suit is not one wherein the rights sought to be enforced are joint, common or derivative. Equally as obviously, we think, the action is not one in which the object is the adjudication of several claims affecting specific property, i. e., the hybrid class action.

■ The only possible category in which the present suit may be placed is that of a "spurious" class action, that is, one where the rights sought to be enforced are several and there exists a common question of law or fact affecting the several rights and common relief is sought. As this court said in Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84, the rule permitting such class actions applies where the defendants jointly act to the injury of persons so numerous that their voluntary unanimous joinder is improbable and impracticable and, though the judgments will be several, a common determination is desired. The thought back of the rule creating this sort of class action is that its recognition will avoid a multiplicity of suits. Knowles v. War Damage Corp., 83 U.S.App.D.C. 388, 171 F.2d 15, certiorari denied 336 U.S. 914, 69 S.Ct. 604, 93 L.Ed. 1077.

The specific question presented to us, then, is whether the present cause comes within the class of spurious class actions defined by the rule. The action is clearly one in which the rights sought to be enforced are several. Such class actions have been approved where separate employees join to recover compensation under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., provided a common question of law or practice is involved; where property owners complain severally of one injury committed by a railroad; where stockholders seek to recover separate damages for fraudulent stock sales; where investors seek to recover the several considerations paid for securities, and other similar cases.

In Oppenheimer v. F. J. Young & Co., Inc., 2 Cir., 144 F.2d 387, 390, the complaint charged that defendants entered into a conspiracy to defraud plaintiffs, whereby, occupying fiduciary relationships, they misrepresented to various bondholders what the debtor was willing to pay for bonds held by plaintiffs. The court held that there was "a common question of fact affecting the rights of all the holders of stamped bonds or certificates of deposit for

stamped bonds who sold them under a misapprehension as to who their purchaser was, or were ignorant of the fact that the City of Cordoba was the real purchaser and was ready to pay more than its putative agents offered." The court added "There can be no doubt that claimants who become parties to this class suit would, if successful, be entitled to a different measure of damages. But if we were to read into the rule a requirement that each bondholder must recover damages at the same rate as seems to have been done by the Circuit Court of Appeals of the Eighth Circuit in Farmers Co-Op. Oil Co. v. Socony-Vacuum Oil Co., 133 F.2d 101, 105, there would be few situations to which the action would apply. Differences in the measure of damages were held not inconsistent with the requirement of 'common relief' in Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84, and in Independence Shares Corp. v. Deckert, 3 Cir., 108 F.2d 51, 55, reversed on other grounds in 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189. In York v. Guaranty Trust Co., 2 Cir., 143 F.2d 503, we recently supported such a class action and adverted to the settled rule in the Second Circuit that members of the class who are not joined in such a class suit will not be affected by the decision. In other words the decision will only be res judicata as to the plaintiffs and parties who have intervened."

In McGrath, Atty. Gen., v. Tadayasu Abo, 9 Cir., 186 F.2d 766, 769, Japanese who had rescinded their United States citizenship, brought a class action in behalf of the named plaintiffs and others similarly situated. The complaint claimed a several right in each one of the members of the classes to rescission of the renunciations under certain conditions existing during the late war with Japan. The court held that the action was, correctly speaking, a spurious class action. "We interpret the phrase 'common relief' as covering cases where all the plaintiffs seek the same type of relief, such as damages or an injunction, as distinguished from cases where some plaintiffs seek an injunction while others seek damages. In this we follow the ruling of the Second Circuit in which it is held that Rule 23(a)(3) covers cases where each

plaintiff has a right to recover damages for a wrong done all, even though the amount of damages recoverable differs for the different plaintiffs. Oppenheimer v. F. J. Young & Co., 2 Cir., 144 F.2d 387, 390. The same principle was stated by the Seventh Circuit in Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84, 88."

In Schatte v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, 9 Cir., 183 F.2d 685, 687, where plaintiff and 25 other individuals brought an action for damages arising out of loss of employment, and the complaint purported to be brought on behalf of 2000 other individuals similarly situated, but each plaintiff's claim was individual and several, and no specific property could be affected by the action, the action was held to be a spurious class suit under the Federal Rules. The court said "Such a suit is merely a permissive joinder device in which the right and liability of each individual plaintiff is distinct and no member of the 'class' is bound by a judgment who does not join as plaintiff or intervenor."

In Knowles v. War Damage Corp., 83 U.S.App.D.C. 388, 171 F.2d 15, two plaintiffs, on behalf of themselves as holders of policies of war damage insurance and on behalf also of all other holders of similar policies, sought to require the defendant to file an accounting of insurance premiums received by it and to refund to the policy holders the net premiums in its possession. The court held that this was a spurious class action under 23(a)(3). See also Independence Shares Corp. v. Deckert, 3 Cir., 108 F.2d 51, reversed on other grounds in 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189; Baker v. S. A. Healy Co., 302 Ill.App. 634, 24 N.E.2d 228; Hunter v. Southern Indemnity Underwriters, Inc., D.C., 47 F.Supp. 242.

■■ Though we have referred to other court's decisions, we think there can be no question but that it is the law of this circuit that persons claiming to have been injured in their respective businesses by another's conspiracy to violate Sections 1 and 2 of the Anti-trust Act constitute a so-called spurious class for which less than

the full number of injured persons may maintain a Class suit under Rule 23(a)(3), provided plaintiffs will adequately represent the class. Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84.[1] From the reasoning in that case it is also clear that such allegedly injured parties may join as plaintiffs under Rule 20(a). And it seems that the Federal Courts are quite generally in accord. True, in Farmers' Co-Op. Oil Co. v. Socony-Vacuum Oil Co., 133 F.2d 101, the Eighth Circuit held that such parties did not constitute a spurious class, but, at the same time, it held that they might join as plaintiffs under the permissive joinder Rule 20(a). Compare, by the same court, Montgomery Ward & Co. v. Langer, 8 Cir., 168 F.2d 182. At any rate, the law of this circuit, by virtue of Weeks v. Bareco Oil Co., supra, is that where the tort complained of by each plaintiff is the same and is claimed to have damaged each of the plaintiffs in the same manner, plaintiffs may join under Rule 20(a) or maintain the suit as a spurious class suit under Rule 23 (a)(3), though the judgments are several and no one is bound unless he is present.

Defendants insist, however, that the present suit is not within this ruling. They argue earnestly, as to the applicability of Rule 20(a), that the several rights of the various plaintiffs do not arise out of the same "series of transactions or occurrences" and that no questions of law or fact "common to all of them will arise in the action." In support of their contention that plaintiffs do not constitute a class within Rule 23(a) (3), they assert that there is no "common question of law or fact affecting the several rights" of the members of the alleged class and that no "common relief is sought." In both connections they argue that the tort complained of is not the same as to each complaining party; that a single conspiracy is not charged but that each plaintiff has his own controversy with defendants wholly lacking in the essentials for maintenance of a spurious class suit.

Whether defendants' view is a realistic one must be determined from the complaint and affidavits submitted upon the motion.[2] Included in plaintiffs' averments are the following: They and others of their class are retail liquor dealers in Chicago who have in the past, from 1939 to the present time, sold Budweiser beer purchased from the primary defendant in open competition with secondary defendants, to whom the primary defendant has continuously charged discriminatory prices lower than those charged plaintiffs and to whom it has extended discriminatory services and facilities in handling the beer. Such discriminatory prices and practices made it possible for the secondary defendants to undersell plaintiffs. The effect was to prevent plaintiffs from competing with secondary defendants, and to lessen and destroy plaintiffs' competition with them. Such discriminations were knowingly received by the secondary defendants. As a result, all members of the class have been injured and damaged in their respective businesses. It is further charged that substantially all sales were for cash, evidenced by sales slips, which differed only as to names and addresses of the purchasers, the quantities sold and the credits for returned empty bottles; that the prices to plaintiffs were "uniformly the same"; that when the seller raised the prices of one, "all prices were raised" and that when they were lowered, all "were reduced at the same time"; that, other than the mentioned differences as to amounts, credits and addresses, "the same proof and the same witnesses" would be offered, "in support of each and every one" of the claims; that all issues as to the interstate character of the commerce, the charged discriminations, the effect of the same upon competition and the assent of the secondary defendants raise questions of law and fact "common to each and every one of the claims" and that the evidence in support of the essential elements of the cause of action "will be identically the same, so far as each claim is concerned."

1. The action of the District Court dismissing the suit was approved not because the class was not within rule 23(a) (3) but because of failure to show that the plaintiffs would adequately represent the class.

2. Both parties have acceded to the rule that affidavits are proper upon such motions. See Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84.

Thus, though the purchases were made by plaintiffs separately and apart from each other, at different times, in different quantities and for different amounts and, consequently, the damage to each is different, plaintiffs have charged one continuous consistently discriminatory plan extending over the years, whereby each of them was damaged in the same way, for the same reason, in the same manner, but in a different amount. In other words, it is the contention of plaintiffs that, because of one continuous, allegedly illegal practice carried on for a number of years, each of them has been damaged in the same way. Their averments, it seems to us, make out a case of an "integral core," which defendants assert is necessary in order to permit a spurious class suit. They present, we think, common questions of law and fact; they set up causes of actions growing out of the same "series of transactions or occurrences", thus meeting the requisites of Rule 20 (a) as to joinder and of Rule 23(a)(3) permitting members of a spurious class to maintain a representative class action.

But, it is urged, no "common relief" is sought. Rule 23(a)(3) provides that in a spurious class action, not only must there be common questions of law and fact "affecting the several rights" but also that "common relief" must be sought. Therefore, defendants say that, inasmuch as the causes of action are "several," as distinguished from "inter-dependent," Knowles v. War Damages Corp., 83 U.S.App.D.C. 388, 171 F.2d 15, 18, this final requisite has not been met.

■ Obviously, the phrase "common relief," as used in the rule, was not intended to mean joint relief, for the expressed purpose is to permit joinder of parties who have several or separable causes of action. Hence to say that "common" means "joint" is to defeat the very purpose of the rule. "Common relief" for persons having separate causes of action who may recover only several judgments, it seems to us, must mean, in order to give life to the purpose of the rule, relief emanating from the same original source, either by way of grant, contract, tort or statute, where the claims of all beneficiaries flow from the same fountain, but are allowed not in a joint judgment but in several judgments. Strictly speaking, this may not be common relief in many senses, but it is separate relief for each growing out of a common source of right to recover. The same character of right to recover exists in several; in that sense, when there are common issues of fact and law, we think, the relief is common within the meaning of the rule. To hold otherwise is to destroy the so-called spurious class entirely, for, if the relief to be recovered by several members of the class in separate judgments must be a common or joint judgment, then the whole provision is meaningless. The rule clearly contemplates, we think, relief in the form of separate similar judgments, emanating from the same source in law and grounded upon common questions of fact.

It is obvious that what we have said also disposes of the questions presented as to Rule 20(a), under which persons may join their several causes of action in one suit, if they arise out of the same "series of transactions or occurrences" and if "any question of law or fact common to all of them will arise in the action." Clearly this rule is an innovation upon common law practice. It has been argued that it is conducive to multifariousness of suits. But it is the law of the land and, inasmuch as Rule 23(a)(3) is, in its essence, a permissive joinder rule rather than a rule defining a recognizable class, it is obvious that the two rules are, as to the intents and purposes involved here, equivalents. Everything we have said as to one applies with equal force to the other. Cases dealing with Rule 20 (a) applying a rationale such as we have announced include: Lansburgh v. Clark, 75 U.S.App.D.C. 339, 127 F.2d 331; Farmers Co-Op. Oil Co. v. Socony-Vacuum Oil Co., 8 Cir., 133 F.2d 101; Alabama Independent Service Station Ass'n, Inc., v. Shell Petroleum Corp., D.C., 28 F.Supp. 386; Middleton v. Coxen, D.C., 25 F.Supp. 632; McNorrill v. Gibbs, D.C., 45 F.Supp. 363.[3]

3. Interesting comments by practitioners, teachers and students concerning the rules may be found in 32 Ill.L.R. 307; 37 ib. 119; 42 ib. 518; 8 Chgo.L.R. 684; 30 Mich.L.R. 878; 19 Cornell L.R. 399; 30 Cal.L.R. 350.

■ In view of our conclusion that the plaintiffs had a right to join as such under Rule 20(a) and to maintain the suit as a class suit under Rule 23(a) (3), it follows that the court wrongfully directed that all plaintiffs except one be dropped and that the claims of plaintiffs be severed.

We fully appreciate the difficulty encountered by trial courts in attempting to give to these two rules the force we have attributed to them. Both, interpreted as we feel they must be, are innovations at odds with earlier ideas of proper law and equity practices. It was once axiomatic that multifariousness of claims was to be avoided and that multiplicity of parties could be permitted only in cases far afield from those of the so-termed spurious class. The latter, obviously, has unity only as an expedient invented and introduced into modern practice for the purpose of reducing multiplicity of suits and speeding up trials. We know the invention has novelty; whether it possesses also the other quality sought, utility, is not yet fully proved. However, sensing as we do that these novel insertions into our rules of procedure were inspired by certain specific supposedly beneficent purposes, it is our duty to give them effect. Perhaps in a case such as this, where each of the parties is entitled to a jury trial, where the transactions are voluminous, complex and intricate and the possible parties so numerous as to be beyond possibility of retention in the memory of any trier of the facts, it may eventuate that the expedient provided is not efficacious in improving practice and procedure. But that possibility does not authorize us so to interpret the rules as to nullify them.

■ One of the requirements imposed upon the plaintiffs was that they file separate amended complaints, stating their claims in separate counts. This complaint alleges violation of only one act, the Robinson-Patman Act, a violation of each of one of its sections, 15 U.S.C.A. 13(a), (e) and (f), that is, (1) price discrimination, (2) discrimination in services or facilities and (3) a claim against the secondary defendants for knowingly receiving the discriminations. Each was set up in numbered paragraphs, as required by Rule 10(b), F.R.

C.P. However, the District Court was of the opinion that the complaint should have been divided into separate counts, each of which set up each separate transaction. We think the court unduly limited plaintiffs in this connection. The complaint, which is a simple direct statement of the causes of action of plaintiffs, in conformity with the spirit of the rules, avoids repetition of basic allegations and is within such cases as James Richardson & Sons v. Conners Marine Co., 2 Cir., 141 F.2d 226, 228. In the course of its opinion there, the court said: "Respondent asserts that there should have been a separate statement of a separate cause of action as to each barge, because the Produce Exchange form stated that each boatload, or parcel if less than a boatload, was to be deemed a separate charter. Since it is now recognized that repetitive verbosity does not make for clarity, refinements of separate statement are not now in favor, Original Ballet Russe, Ltd., v. Ballet Theatre, Inc., 2 Cir., 133 F.2d 187; Federal Rules of Civil Procedure, rule 10 (b), 28 U.S.C.A. following section 723(c); and though a formal requirement of separation is still retained in the admiralty rules, yet it should be construed in a practical way. We cannot see any possible gain to respondent by forcing from 17 to 21 repetitions of the basic allegations". This view we think is in accord with the purposes of the rules. Consequently we consider the complaint sufficient. Of course, this conclusion does not deprive the defendants of remedies provided by the rules looking to the disclosure of further information by plaintiffs when and if there is occasion for such relief.

■ Defendants argue in their brief that plaintiffs do not adequately represent their class members. However, we fail to find in the record that this contention was presented to the District Court or that the District Judge's attention was directed to it. We think, therefore, the point is not before us for review. Despite this conclusion, however, on the face of the record as it is presented to us, in the absence of any showing other than that made out in the complaint and the affidavits, the adequacy of representation of plaintiffs in behalf of

their class is not now in issue. As the court said in Oppenheimer v. F. J. Young & Co., Inc., 2 Cir., 144 F.2d 387, 390, "Inasmuch as persons who do not become parties cannot be affected by the decision, we need not go further as to the adequacy of plaintiffs' representation of others in the class. * * Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84. If it shall later appear that the plaintiffs are not able within a reasonable time to obtain others to intervene in the class action it may properly be dismissed as a class action because of lack of adequate representation of members of the class." To this rule, we shall conform, at least until there is presented to us for review a decision by the District Court upon some further showing at some future time that plaintiffs' action will not fairly insure the adequate representation of all members of the class. Pelelas v. Caterpillar Tractor Co., 7 Cir., 113 F.2d 629, certiorari denied 311 U.S. 700, 61 S.Ct. 138, 85 L.Ed. 454; Weeks v. Bareco Oil Company, supra.

The judgment is reversed with directions to the District Court to proceed in accord with the announcements herein.

## PER CURIAM.

In their petition for rehearing defendants ask us to "remand the case for further determination with regard to the question whether or not the case actually arises out of the same series of transactions." In the interest of regularity of proceedings we think the request must be denied. We have held merely that, upon the pleadings submitted, supplemented by an affidavit as to what plaintiffs expect to prove, a prima facie case is made out, i. e. a sufficient showing of a right to join the plaintiffs in one action under the two rules discussed in our opinion. What may happen hereafter as the cause progresses is not before us; indeed, it can not be foreseen. Consequently we think it improper on our part to remand a cause where we have held the pleadings sufficient, to hear again the very question upon which the parties were heard in the District Court and, upon review, in this court. All future proceedings, all questions of sufficiency of the evidence to support the pleading,

and the multitudinous questions which arise in the course of a trial de novo are for the trial court; not for a court of review. The trial tribunal must remain unhampered by any preconceived ideas on our part upon anything other than the right of plaintiffs to attempt to prove their claim.

The petition for rehearing is denied.