**UNDERWOOD v. MALONEY et al.**

**DAWSON et al. v. MALONEY et al.**

**Civ. A. Nos. 14398 and 14547.**

United States District Court
E. D. Pennsylvania.

May 7, 1953.

224

Abraham E. Freedman, Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiffs.

Charles A. Wolfe and Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendants.

CLARY, District Judge.

The above two actions, one by a former President of Local 542 of the International

Union of Operating Engineers, and the other by 12 members of Local 542, in their own behalf and on behalf of all members of said Local Union, against William E. Maloney, President of the International Union of Operating Engineers in the one case, and against William E. Maloney, President, and Hunter P. Wharton, individually, and as representatives of the International Union, arise out of the same controversy and seek in a large measure the same relief. The defendants have moved the court to dismiss the actions and the motions in both cases will be treated in one opinion.

Roy J. Underwood, former President of the Local, was suspended from office by Maloney, who invoked international supervision over the affairs of the Local and appointed Hunter P. Wharton as his personal deputy to administer the affairs of the Local in Maloney's name. Thereafter Underwood was brought to trial before the General Executive Board on charges preferred by Maloney, found guilty, removed from office, suspended from membership in the Union for a period of six years, and fined the sum of $3500. Underwood's suit seeks to nullify the Order of Supervision, set aside the action of the General Executive Board, and damages. The suit of the members, designated as a class action, likewise seeks to nullify the Order of Supervision, to reinstate the officers of the local union and otherwise restore the control of the local to its own membership as well as the return of all funds, records and assets, and for an accounting.

The motions to dismiss on behalf of the defendants raise generally the following contentions:

1. That the actions against Maloney should be dismissed or the return of service of summons should be quashed on the ground that Maloney has not been served with process.

2. That the persons on whose behalf the second action has been brought do not constitute a class.

3. That plaintiffs have failed to exhaust the internal remedies provided by the Constitution of the International Union and, further, that in instituting this suit plaintiffs have violated an express written contract attached to the application for membership in the Union which contains an agreement whereby members waive their rights to sue in any court.

4. That in any event the complaint should be stricken on the ground that paragraphs 8 to 27 are redundant, immaterial, impertinent and scandalous.

The first position taken by the defendant Maloney is that he was not personally served within this jurisdiction and that service upon Wharton was ineffective as to him since Wharton was not an authorized agent to accept service for him. Defendant further relies on the provision in the Constitution of the International Union expressly denying authority or permission to a Local Union, Officers or Members, Supervisors or Representatives, to accept service for or on behalf of any general Officer, etc., of the International Union.

Under Federal Rules of Civil Procedure 4(d) (1), 28 U.S.C.A., service of process may be made upon an individual by delivering a copy of the complaint to an agent authorized by law or by appointment. Rule 4(d) (7) provides that service is proper if made in a manner prescribed by State law for service of process in actions brought in courts of general jurisdiction of that State. Pennsylvania Rule of Civil Procedure 2079 (b), 12 P.S.Appendix, provides that service upon an agent of a defendant is proper.

Under the order of defendant Maloney invoking International supervision (the order is set forth as an exhibit to plaintiffs' complaint), it would appear that defendant Maloney as President of the International Union personally took over the affairs of the Local and he appointed Wharton to act as his "Deputy". Since defendant Maloney was personally supervising the affairs of the Local, through his Deputy Wharton, he must be considered as doing business within the jurisdiction, and service upon Wharton, his Deputy, was valid service upon defendant Maloney. See Stoner v. Higginson, 316 Pa. 481. It would appear

further that since Maloney invoked supervision over the affairs of the Local under the authority vested in him as President of the International Union, service upon his Deputy constitutes valid service upon Maloney as a Representative of the International Union for purposes of a class action against the International Union. Malarney v. Upholsterers' Intern. Union, D. C., 7 F.R.D. 403.

Defendant Maloney argues that Article 1, Section 3, of the Constitution of the International Union, precludes service upon defendant Maloney since it provides " * * no Local Union, Officer or Member thereof, Supervisor or Representative, shall be authorized or permitted to accept service of summons, subpoena, or make entry of appearance for or on behalf of any General Officer, General Executive Board, Board of Trustees, or any other Local Union or other subdivision of the International Union of Operating Engineers".

 It appears clear that such a provision could have no effect if it conflicts with the provisions of law relating to service. The quoted provision relied on by defendant Maloney is, however, susceptible of a construction consistent with the principles of law relating to service, i. e., the provision of the Constitution has no application, if, in fact, the International Union or any of its Officers is doing business within the jurisdiction, for in that case the law imposes the liability to service of process as a condition of doing business and imposes the burden upon the person who is serving as agent to accept service whether or not he is denominated as such by his principal, or whether or not he is authorized by said principal to accept service on his behalf. The quoted provision of the Constitution has applicability only to limit the power of a local union, etc., to bind the International Union or its officers by accepting service where neither the International Union nor any of its officers is otherwise amenable to service of process within a particular jurisdiction.

As to the second objection that the Members of Local 542 and its branches do not constitute a class, defendants place main reliance on the decisions in Giesecke v. Denver Tramway Corp., D.C., 81 F.Supp. 957, and Giordano v. R. C.A., 3 Cir., 183 F. 2d 558.

In Giordano, the Court of Appeals for the Third Circuit held that the suit was not a true class suit but was one brought solely to vindicate the plaintiff's individual rights. The plaintiff and several others, who were about to be expelled from a Union, sought an injunction against the defendants prohibiting the expulsion. Under these circumstances the court concluded, 183 F.2d at page 561:

"The suit must, therefore, be regarded as brought by the plaintiff either solely to redress his own personal grievances against the defendants or possibly to redress the grievances of all the sixteen individuals whose expulsion has been voted. In the latter case it would be a spurious class suit, rather than a true one, since the individual rights of each of the sixteen are several rather than joint, common or secondary."

The court further pointed out that the other fifteen who were about to be expelled were all conveniently located and could easily have joined in the suit and, therefore, if the suit was maintainable at all, it must be regarded as brought by the plaintiff for his own benefit solely. The court concluded finally that it lacked jurisdiction because there was not the requisite jurisdictional amount in controversy as to any one plaintiff, and the claims of all could not be aggregated to determine the amount in controversy.

 The Giesecke case is somewhat similar in that it was one in which the plaintiff sought to enforce a personal right, one for his personal interest rather than a common one. It was a suit to compel the declaration and payment of certain preferred dividends. The court there concluded that it was not a true class action since it was not one to enforce a right which was joint or common. The distinction was pointed out in the following language, 81 F.Supp. at page 961:

"The result of all the authorities, as I view it, is this. If a person has a claim which is a joint, undivided or common claim with others, even though separable among themselves, then action on such claim must be brought in a stipulated way. Either the claimant must join as parties all others holding interests in the joint, undivided or common fund and thus determine their interests, or, by virtue of a class action, bring suit on behalf of all other parties similarly situated. If the representation is otherwise sufficient, the claim of the individual plaintiff need not amount to the jurisdictional amount, but the amount of the joint claim will be the test of jurisdiction. This is denominated a true class action, and is represented by Rule 23(a) (1).

"If the claim of the party is a personal and separate claim, even though payable out of a common fund, then in a federal court such claimant may bring an individual action for his separate claim or, if there is a common question of law or fact affecting the several rights and a common relief is sought, he may bring a class action. In either case, whether the suit is an individual one or is brought by one or more on behalf of the class, the claim of the plaintiff must, in itself, equal the jurisdictional amount and cannot be aggregated with the claims of others. This is usually denominated a spurious class action and is represented by Rule 23(a) (3)."

In determining whether or not an action is a true class action regard must be had for the nature of the claim asserted by the plaintiff or plaintiffs. In the instant case, applying that test, this is clearly a true class action. Plaintiffs seek an injunction against the defendants restraining them from exercising supervision or control over the property, business affairs, and the membership of the Local Union of which they are Members and seeking further the restoration of the President of the Local. All of the relief sought in this action indicates that plaintiffs are asserting a claim involving a common interest, a joint interest, on behalf of all the membership of the Local Union. No personal right is being asserted nor is redress sought for a purely personal grievance such as in Giordano. The action is therefore a true class action and is properly maintainable provided the plaintiffs are such representatives of the class as will fairly insure the adequate representation of all. A finding that the plaintiffs will fairly insure adequate representation of all is a condition precedent to the maintenance of a class action, and is a question of fact for the trial court to pass upon. Pelelas v. Caterpillar Traction Co., 7 Cir., 113 F.2d 629. On this point there is very little at this stage of the proceedings upon which the court may make a finding of fact as to the adequacy of representation. It is true that plaintiffs must establish that they are such representatives of the class as will fairly insure the adequate representation of all, otherwise, the action should be dismissed as a class action. See Knowles v. War Damage Corp., 83 U.S.App.D.C. 388, 171 F.2d 15; Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84; cf. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22; Pennsylvania Co. for Insurance on Lives and Granting Annuities v. Deckert, 3 Cir., 123 F.2d 979. However, since the defendant's affidavit relating to lack of representation of the class by plaintiffs is based in large measure on conjecture, I feel that the interests of justice require a hearing before a ruling is made on the question of the adequacy of representation. That question will be left to the time of trial and will then be determined preliminarily to consideration of the case on the merits.

The third contention has two aspects, one relating to exhaustion of remedies within the Union, and the second relating to the alleged "covenant not to sue" contained in the application for membership in the Union.

As to the first, defendants argue that under the Constitution redress may be had internally within the organization by appealing the action of the General Executive Board to the Convention and until

plaintiffs have done this, they have not exhausted their internal remedies. However, it appears that the Convention will not meet again until 1955. The same situation obtained in Tisa v. Potofsky, D.C., 90 F.Supp. 175, 182, in which case the court stated that

"the expulsion remains effective pending the appeal to the convention, which * * * will not be held until October or November of this year. The alleged irreparable violation of F TA's rights, however, occurs immediately upon expulsion. Consequently, as a practical matter, there is no tribunal available within the CIO to which appeal can be made to prevent these wrongs. Hence I conclude that the complaint is not premature."

In the instant case, plaintiffs would be required to wait until the next meeting of the Convention in 1955 before any action could be taken internally. A remedy delayed is a remedy denied. See Heasley v. Operative Plasterers & Cement Finishers International Ass'n, 324 Pa. 257, 188 A. 206; O'Neill v. United Association of Journeymen Plumbers, 348 Pa. 531, 36 A.2d 325.

■■■ The second aspect of this contention touches upon the agreement contained in the application for membership of each of the plaintiffs that each member will "waive any right to institute proceedings in any Court of law or equity against the Union". Defendants contend this is a covenant not to sue and is binding under all circumstances. Ordinarily an agreement not to sue is enforceable. There was here such an agreement. But implicit in that agreement there was a corresponding duty and obligation on the part of the Union to make available to the members recourse to a Board or other internal tribunal where they may be accorded a fair hearing on grievances. Plaintiffs' complaints allege facts, which for the purposes of these motions I must accept as true, and which, if established, show complete lack of good faith on the part of the Union and a fraudulent denial of the rights and remedies promised the individual members by the Union. This would constitute breach of contract on the part of the Union and under such circumstances recourse may be had to the Courts. To construe the agreement otherwise would render it void as against public policy. Such recourse cannot be had merely because a member is disgruntled, dissatisfied, or disappointed with a result arrived at after a fair hearing. The question as to whether plaintiffs have no remedy within the Union because of bad faith on the part of the Union and the subversion of the internal tribunals set up to determine the grievances of members is one which must be determined at time of trial.

■■■ As to the fourth contention, without ruling specifically as to any one averment, I conclude that the complaint is objectionable for failure to comply with the requirements of Rule 8 that pleadings shall contain short and plain statements of the grounds on which relief is sought and that averments be simple, concise and direct. For that reason, defendants' motions to strike will be granted with leave, however, to the plaintiffs to amend the complaint to conform to the requirements of Rule 8 within 20 days.

Appropriate orders will be entered.