William H. WALKER, Plaintiff,

v.

The GRAND LODGE I.B.P.O. ELKS OF THE WORLD, a corporation, Robert H. Johnson, Grand Exalted Ruler, William C. Hueston, Grand Secretary, Perry B. Jackson, Treasurer, Hobson R. Reynolds, Grand Commissioner Civil Liberties, Charles P. McClane, Grand Director of Shrine and Public Relations, and George W. Lee, Grand Commissioner Education, Defendants.

Civ. A. No. 3975-56.

United States District Court
District of Columbia.

Jan. 3, 1957.

Tibbs, Windsor, Tyler & Harris, Washington, D. C., for plaintiff.

Perry W. Howard, Washington, D. C., for defendants.

MORRIS, District Judge.

The complaint states that the plaintiff is a resident of the District of Columbia and a member of and the grand traveling auditor of the defendant fraternal order, which was incorporated under the laws of the State of New Jersey and does business "in its lodge organization and set-up" in the District of Columbia, that the individual defendants are officers of the order, and that the plaintiff represents others similarly situated. After reciting a futile effort to obtain relief from waste, mismanagement and fraud in the order from the grand exalted ruler, the complaint alleges a scheme on the part of the officers to perpetuate their tenure of office, accomplished by an illegal amendment to the constitution changing the secret ballot for the election of officers to election by viva voce vote, and a fraudulent control of the delegates' votes through payments of money having no relation to, but designated as, "mileage" to the conventions after faithful performance by such delegates, gross mismanagement and waste through other illegal amendments authorizing the grand secretary, with approval of the grand exalted ruler, to transfer funds from any department

of the order to the general fund, annual office expenses of $2,000 for three of the officers, although such expenses in larger amounts have always been paid from the general fund, and this item is carried on the books as "travel expense" rather than "office expense," and traveling expenses (even for meetings held in their own offices) are paid to the officers in greater amount, leaving the actual use of the $2,000 for these officers questionable, failure of the officers to answer inquiries, to answer mail, to make adequate reports or to keep records as required by the constitution and by-laws of the order, resulting in a substantial diminution of the membership, fraudulent reports respecting income from the sale of badges which all delegates and members are required to wear in order to participate in the social or business functions of the conventions, untimely and inadequate minutes and reports required by the constitution, and other detailed incidents amounting to gross mismanagement and waste of funds of the order by the officers, and seeks injunctive relief from further waste and mismanagement, vacation of the offices of grand exalted ruler and grand secretary, holding the election of the present incumbents to be null and void, and the appointment of a receiver to conduct the affairs of the order and to preserve its assets. Defendants have moved to dismiss the complaint upon the ground that this Court lacks jurisdiction to grant the relief sought, and further that there is no showing that this is a genuine class action.

Since the hearing in this matter on October 16, 1956, plaintiff learned from the reported case of Grand Lodge I. B. & P. O. O. Elks of World v. Grand Lodge I. B. & P. O. O. Elks, Inc., 4 Cir., 50 F. 2d 860, 861,[1] that defendant order had also obtained a charter in the District of Columbia, and filed a photostat copy of said charter, showing recordation on January 22, 1908, following which defendants filed a photostat copy of the charter whereby it was incorporated in the State of New Jersey on July 30, 1906. The name given the corporation is identical on each of the charters. The charter issued in the State of New Jersey has a much broader scope than that issued in the District of Columbia, namely:

"2. The purpose for which it is formed is the social and recreative enjoyment of its members and to promote friendly and fraternal relations between them and to provide for the relief of destitute members of their families, and to maintain a fund for that purpose, and to contract with its members to pay death benefits according to the rules or by laws adopted by it or by any subordinate lodge, and to agree to pay the same to the husband, wife, father, mother, son, daughter, brother, sister or legal representative of such member after his or her death.

"3. The said corporation shall have the power to organize, conduct and supervise subordinate lodges throughout the United States and Canada, which lodges shall have the same powers as are herein conferred, but shall be subject to and under the control of the Grand Lodge herein incorporated.

"4. The corporation is to be located and its principal business to be conducted in the City of Jersey City in the County of Hudson and State of New Jersey.

"5.    *    *    *    *
"6. The corporation may have an office or offices outside of the State of New Jersey for the convenience of the Grand Officers and

---

1. Wherein the Court, speaking through Judge Parker, stated:
   "Complainant is incorporated under the laws of New Jersey. The order has obtained charters under the laws of Ohio, New York, and the District of Columbia also."

Trustees or the officers and trustees of subordinate lodges, where meetings may be held at such places as may be determined or authorized by the Grand Lodge herein incorporated.

"7. The corporation shall maintain an office in the State of New Jersey in accordance with the requirements of the statute in such case made and provided, * * * and Frank J. Higgins shall be the resident agent in charge of said office upon whom process against said corporation may be served."

The District of Columbia charter provides in pertinent part as follows:

"*Second:* That the term of its existence shall be perpetual.

"*Third:* That its objects shall be and are benevolent, social and altruistic, to promote and encourage manly friendship and kindly intercourse; and to aid, protect and assist its members and their families and to do and perform every lawful act and thing necessary or expedient to be done, or performed for the efficient and profitable conducting of said business as authorized by the laws of Congress, and to have and to exercise all the powers conferred by the laws of the District of Columbia upon corporations organized under the aforesaid sub-chapter three (3)."

■■ The Court now is confronted with the question of whether, for the purposes of this suit, the defendant corporation is to be treated as a foreign or a domestic corporation. The question of citizenship of corporations which have been incorporated in more than one state has arisen in instances where the corporation has been licensed to do business in a second state, or "domesticated" by statute, where the corporation has been incorporated by compulsory statute, and where, as here, the corporation has voluntarily been incorporated in the second state. The cases all seem to have arisen under diversity of citizenship jurisdiction of federal courts, the amenability of a corporation to attachment against its property as a non-resident in a second state of incorporation, taxation of the corporation by the second state, and for acts committed by the corporation in the second state, and no case has been called to the attention of, or located by, the Court dealing with the specific question of whether a court in the second state has jurisdiction which requires it to entertain a suit calling for supervision of the internal affairs of a corporation which is denied in the case of foreign corporations.

The case of Grand Lodge I. B. & P. O. O. Elks of World v. Grand Lodge I. B. & P. O. O. Elks, Inc., supra, was a suit brought by this defendant corporation to enjoin the use of its name by a Virginia corporation composed of ex-members of defendant corporation. And from excerpts of a book on the history of defendant corporation, set forth in a memorandum filed by the defendants, it appears that the District of Columbia charter was procured by the persons who had seceded from the defendant corporation and incorporated in Virginia, and it also appears that the two factions have since united. This situation makes it especially applicable to refer again to the opinion of Judge Parker, wherein quotation as follows was made from the case of Nashua & L. R. Corp. v. Boston & L. R. Corp., 136 U.S. 356, 10 S.Ct. 1004, 34 L. Ed. 363:

" 'There are many decisions, both of the federal and state courts, which establish the rule that, however closely two corporations of different states may unite their interests, and though even the stockholders of the one may become the stockholders of the other, and their business be conducted by the same directors, the separate identity of each as a corporation of the state by which it was created, and as a citizen of that state, is not thereby lost.' "

Judge Parker also quoted from the case of Farnum v. Blackstone Canal Corp., 8

Fed.Cas. page 1059, No. 4,675, 1 Sumn. 46, as follows:

"Mr. Justice Story said: 'Although, in virtue of these several acts, the corporations [one of Rhode Island and one of Massachusetts], acquired a unity of interests, it by no means follows, that they ceased to exist as distinct and different corporations. Their powers, their rights, their privileges, their duties, remained distinct and several, as before, according to their respective acts of incorporation. Neither could exercise the rights, powers, or privileges conferred on the other. There was no corporate identity. Neither was merged in the other. If it were otherwise, which became merged? The acts of incorporation create no merger, and neither is pointed out as survivor or successor. We must treat the case, then, as one of distinct corporations, acting within the sphere of their respective charters for purposes of common interest, and not as a case where all the powers of both were concentrated in one. The union was of interests and stocks, and not a surrender of personal identity or corporate existence by either corporation.'"

And Judge Parker stated:

"As heretofore stated, there is no question but that the Grand Lodge representing the national order is the real party in interest in the suit. We think it equally clear that the New Jersey corporation, in whose name suit is brought, is an incorporation of the Grand Lodge representing the national order. A number of witnesses so testify, and it is significant that the certificate of incorporation is signed by as many citizens of New York as of New Jersey and contains the provision that the corporation shall have power to conduct and supervise subordinate lodges 'throughout the United States and Canada, which lodges shall have the same powers as are herein conferred, but shall be subject to and under the control of the Grand Lodge.'"

Since the defendant corporation was incorporated in the State of New Jersey, and has existence there only as the parent or "conductor," "supervisor," and "controller" of the subordinate lodges, to which capacity the relief sought in this proceeding relates, the charter in the District of Columbia, while giving it a local existence, does not subject it to the jurisdiction of this Court to take over the control of its affairs through the appointment of a receiver, and for the other drastic relief sought by plaintiff.

Defendants also urge that plaintiff does not have standing to sue in a class action, representing so many throughout this country and other countries, who have not acquiesced therein. Rule 23 of the Federal Rules of Civil Procedure [2] provides:

"(a) *Representation.* If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common, * * *."

Inasmuch as this plaintiff, as grand traveling auditor, is so positioned to have access to records, which others of the class could not have, I think he could adequately represent the class in so far as the procurement of evidence is concerned, but there are other considerations. As stated by our Court of Appeals in Knowles v. War Damage Corporation, 83 U.S.App.D.C. 388, 171 F.2d 15, 18, certiorari denied 336 U.S. 914, 69 S.Ct. 604, 93 L.Ed. 1077:

"There must be a showing of adequate representation of the class,

for members of that class are to be bound by the outcome of the action. Issues determined in a true class action are res judicata so far as any member of that class is concerned, even though he never became a party to, or knew of, the class action itself. Factors bearing upon adequacy of representation are various and are not specifically enumerated in the law: *It is pertinent to consider whether other members of the class have notice, express or constructive, of the pendency of the action and of its representative character; whether such members desire, or acquiesce in, such representation; whether the number of parties is sufficient as compared to the numerical size of the class."* [Emphasis supplied.]

While it may be assumed that the entire class, on behalf of which the plaintiff purports to bring this proceeding, would want the scandalous conditions set forth in the complaint corrected, which for purposes of this motion must be considered true, there is no showing that any substantial part of the membership other than the plaintiff himself desires the affairs of this voluntary fraternal organization to be taken out of the hands of the membership by an officer of this Court to accomplish such correction, when quite obviously, if there be a substantial part of the membership desiring to do so, complete correction can be achieved by the membership and the constituent lodges through the processes provided by the constitution and by-laws of the organization itself. It would require a much stronger showing than has been made to convince this Court that this is a true class suit within the meaning of Rule 23 of the Federal Rules of Civil Procedure, supra. In these circumstances, my conclusion is that the plaintiff has no standing to maintain this action, and accordingly defendants' motion to dismiss will be granted.

Counsel will prepare an appropriate order to carry this decision into effect.