226 F.2d 714
 BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL COLLEGE, et al., Appellants,
v.
Alexander P. TUREAUD, Jr., a Minor, By Alexander P. Tureaud,
Sr., His Father and Next Friend, Appellees.
 No. 15540.
 United States Court of Appeals Fifth Circuit.
 Oct. 26, 1955.
 
 W. Scott Wilkinson, Shreveport, La., L. H. Perez, New Orleans, La., L. W. Brooks, C. V. Porter, and J. R. Fuller, Baton Rouge, La., for appellant.
 A. P. Tureaud, New Orleans, La., and Robert L. Carter, New York City, for appellee.
 Before RIVES and CAMERON, Circuit Judges, and DAWKINS, District Judge.
 PER CURIAM.
 
 
 1
 After long and serious study of the petition for rehearing the majority of the court has reached the conclusion that a rehearing should be granted. These are some of the considerations which have led to that conclusion:
 
 
 2
 The complaint alleged that the action of the Supervisors and other administrative officers of L.S.U., in refusing to admit plaintiff as a student at L.S.U., in the category which he sought, pursuant to the state Constitution and statutory provisions, was violative of the Fourteenth Amendment to the Federal Constitution, and for this reason a statutory court of three judges, 28 U.S.C.A. § 2281 et seq. should be convoked to hear the case. The trial judge held, in effect, that he alone had jurisdiction, and not the three-judge court, under the well settled doctrine of equal facilities, and found at the hearing, when the case was first tried, the facts in detail to show that courses and facilities of Southern University (devoted exclusively to the colored race) were greatly inferior to those of L.S.U. He therefore concluded that the refusal to admit plaintiff was violative of the Fourteenth Amendment. D.C., 116 F.Supp. 248.
 
 
 3
 On appeal, this court, one member of the panel dissenting, held that the judge below was without jurisdiction sitting alone, and remanded the case for the convocation of the statutory court. Board of Sup'rs of La. State University, etc. v. Tureaud, 5 Cir., 207 F.2d 807.
 
 
 4
 On application of plaintiff, the Supreme Court granted certiorari and by a per curiam opinion (covering three cases, Nos. 9, 85 and 595) 347 U.S. 971, 74 S.Ct. 783, 784, 98 L.Ed. 1112, said: 'The petitions for writs of certiorari are granted. The judgments are vacated and the cases are remanded for consideration in the light of the Segregation Cases decided May 17, 1954, Brown v. Board of Education, etc., 347 U.S. 483, 74 S.Ct. 686 (98 L.Ed. 873), and conditions that now prevail'.[1] The mandate issued by the Clerk of the Supreme Court to the Clerk of this court June 28, 1954 added to the foregoing judgment the phrase, 'Vacated without Costs'. The very use of the word 'vacate' (which indicates only to make vacant), instead of the word 'reverse', which carries the implication of disapproval,[2] is significant of the fact that the Supreme Court was not finding fault with our decision and judgment when the case was formerly before us, but was merely nullifying our judgment in order that we might follow the mandate contained in the Supreme Court's decision. That mandate was that we consider the whole case in the light of two things, the Segregation Cases and 'conditions that now prevail'. The inclusion of the phrase, 'without costs', fortifies that concept of the effect of the Supreme Court holding because successful litigants recover costs. Upon receiving this mandate we passed it along in identical terms of the District Court in order that the consideration of these two new factors might be given by the trier of the facts as ordered by the Supreme Court.
 
 
 5
 When the case was first on appeal, plaintiff changed his position entirely, abandoned his request for a three-judge court, and relied solely upon the fact question of equal facilities and the findings of the trial court; but at no time did he offer to amend his pleadings to conform thereto. His position before the Supreme Court, when he applied for certiorari, was again modified to conform with the expediencies of the situation, also in the original complaint. When the case went back to the District Court on the action of this court pursuant to the Supreme Court's mandate, plaintiff did nothing but file a motion for reinstatement of the preliminary injunction, assigning no grounds at all. The case was set down on the motion calendar alone, as distinguished from the merits, and was heard as such. The motion was sustained without any further allegations or proof either that there had or had not been any change in the conditions that now prevail from those which existed when the complaint was filed, and without giving the Supervisors any opportunity to introduce any pertinent proof which may be embraced within the purview of the two Supreme Court decisions.
 
 
 6
 Of course, the vacating by an appellate court of a judgment is not necessarily the same thing as a complete reversal and remand for a new trial, it being well settled that the latter requires all previous evidence to be reintroduced to have effect. Madden Furniture, Inc., v. Metropolitan Life Ins. Co., 5 Cir., 127 F.2d 837; Shell Petroleum Corp. v. Shore, 10 Cir., 80 F.2d 785. As shown above, the vacation of the judgment of this court without costs indicates a desire primarily to place the record in such shape that the case might be tried again solely on the ground that new criteria of decision had been introduced, to-wit, the decision in the Segregation Cases and the consideration to be given to 'conditions that now prevail', as spelled out in the Segregation Cases. It may be that the effect of the Supreme Court's order was that the trial should proceed as unfinished, contemplating the use of the former evidence if considered by either side as applicable, together with the introduction of further evidence. Whatever the order may mean, considering the unusual turn the case took after plaintiff switched his positions, and the background of the many other cases with which the court was dealing at the time, it is not reasonable to conclude that the disposition by the Supreme Court, in a matter of such importance, can be treated as having completely done away with all statutory and jurisprudential rules of procedure and pleading.
 
 
 7
 The cases relied upon by Judge Rives in his dissent on the first appeal, and by Judge Wright, Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114; McLaurin v. Oklahoma State Regents, 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149; Wichita Falls Junior College Dist. v. Battle, 5 Cir.,204 F.2d 632, and others were presented in such a manner, either because of stipulations or other developments, as to involve only issues of fact-- that is, were the facilities equal? Here, however, in view of the plaintiff's switch in position, the issues contained in the pleading clearly embrace that of conflict between the Fourteenth Amendment and the state constitutional and statutory provisions, and the injunction has been granted by one judge on that ground, as well as the action of the administrative officials thereunder. Certainly nothing said by the Supreme Court can be construed as meaning that the Act of Congress vesting jurisdiction solely in a three-judge court under those circumstances can be ignored so as to permit a single District Judge, acting alone, to declare the provisions of a state constitution and statute violative of the federal Constitution and to grant an injunction, no matter how plainly such conflict may appear in the light of other Supreme Court decisions. It is our view that the recent decisions of the Supreme Court belong in the realm of stare decisis, but not of res judicata, in subsequent cases involving the same issues; for the Act of Congress depriving a District Court of one judge of the power to issue such an injunction requires that it be done only by the statutory court.
 
 
 8
 Further, it seems likely that, in such a case as the one before us, plaintiff is bound to invoke the jurisdiction and procedure which Congress laid down in the statute. In those cases specifically decided on the merits by it, the Supreme Court has committed to the District Judges the responsibility of enforcing its decree.[3] But in cases such as this, which remain to be decided on the merits, it is not reasonable or consistent that the Supreme Court could, or intended, to set at naught the Act of Congress, which has plenary power over the jurisdiction of District Courts. Such an interpretation would mean that, in spite of that statute, all a plaintiff would have to do would be to allege that he was a member of the colored race who had been denied admission to enter public school, offer himself in evidence and ask a District Judge for a mandatory injunction, which, under settled principles of law, is never issued preliminarily or in a doubtful case, Sawyer v. U.S. Steel Co., 90 U.S.App.D.C. 416, 197 F.2d 582; Youngstown Sheet & Tube Co. v. Sawyer, D.C., 103 F.Supp. 569; O'Malley v. Chrysler Corp., 7 Cir., 160 F.2d 35; Kelly v. Dowd, 7 Cir., 140 F.2d 81; Donnelly Garment Co. v. Dubinsky, 8 Cir., 154 F.2d 38; Patton v. Administrator of Civil Aeronautics, D.C., 112 F.Supp. 817, to compel his admission. Certainly no member of the white race could obtain such relief from such a source by similar procedures. In any case there must be conclusive proof that the complainant has been excluded solely because of his race; and these and other questions, as we have demonstrated above, must be decided by the statutory court of three judges.
 
 
 9
 Of course, where the constitutional question has been conclusively settled, and the plaintiff invokes its application contrary to that settled law, a single judge may dismiss the pleading, if there be no other issue, as disclosing no cause of action. The cases relied upon by Judge Rives in his specially concurring opinion, and by Judge Wright, who tried the case below, clearly support this principle. However, they cannot, in our opinion, be considered authority for the converse of that proposition-- that is, that a single judge may enforce by mandatory injunction a demand against a state officer claiming to act under color of state law, where the right to relief depends upon proof by the plaintiff of facts necessary to sustain such a demand. It is well to note also that the Supreme Court could easily have settled the question of the necessity of convening a statutory court by simply saying that it was not necessary; but it significantly saw fit not to do so, although confronted with the decision of this court that it was necessary, merely vacating our judgment without costs and declining to reverse our decision on the subject. Similarly, the Supreme Court could have ordered that the judgment of the District Court be reinstated. But it did not do either of those things, but used the mildest of words in setting aside our judgment with the clear intention that the whole case be considered in the light, not only of the evidence theretofore introduced, but of the new criteria of decision which had been introduced in the Segregation Cases and in the admonition that consideration should be given to conditions now prevailing.
 
 
 10
 Undoubtedly the states still have the authority to prescribe the qualifications for admission to public schools, applicable to all candidates regardless of color. This being true, each applicant must allege and prove that he is qualified. In this situation it is difficult to perceive how a court can deal with a single plaintiff's case on the theory of a class action in such a manner as to subject the Board of Supervisors to contempt citation if they should deny to other applicants, not actual parties to the action, admission solely because they are Negroes. Not only would each applicant have to prove his color, but he would also be bound to prove his individual qualifications and to prove that he has offered to furnish a showing as to such matters to the proper school authorities.
 
 
 11
 In this record, there is no proof to sustain the allegation that there are many others besides complainant, too numerous to make parties, having the identical status and possessing the necessary qualifications for admission to the same college and courses. Certainly there can be no such all-inclusive injunction covering all members of an alleged class without proof that the others desire to be so represented in substantial numbers or have requested plaintiff so to represent them. Such facts cannot be assumed. 3 Moore's Federal Practice, 3418, et seq.; Rule 23, Fed.Rules Civ.Proc. 28 U.S.C.A.; Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84.
 
 
 12
 It is also manifest that there is a serious question as to whether plaintiff is properly in court. Representation by 'next friend', as he alleges, is unknown to Louisiana Law which is controlling. If both his parents are living and are still married, his father must bring the suit in his own name for the benefit of the son. LSA-Civil Code, Articles 216, 221, 222, 235. If the mother is dead, or the parents are judicially separated or divorced, the father must legally qualify as tutor and so bring the action. Louisiana Code of Practice, Articles 108, 109; LSA-Civil Code, Articles 334 and 335. (Dart's Code, 1932 Ed. and authorities in footnotes). This plaintiff's pleadings say nothing about such facts, and the state law is clear that a minor (under twenty-one years) cannot stand in judgment in the courts. (See above Louisiana authorities.)
 
 
 13
 This case is so complicated by plaintiff's pleadings and by his reversals of position not supported by amendments to the pleadings, and also by the order and mandate of the Supreme Court and the new elements introduced into the case by them and by the Segregation Cases, all of which we are admonished to consider, that it is apparent that the only way the matter can be straightened out and full justice done the parties is to set aside the judgment of the District Court appealed from and to remand the case with instructions to allow amendments to the pleadings or the filing of another complaint so as to present the issues set forth in the Segregation Cases and conditions that now prevail. It is of great importance that the issues presented in this case be defined and determined in complete conformity with procedural law, and that they be not permitted t0 rest upon assumptions or inferences which may serve to plague this and other courts in similar cases which may arise.
 
 
 14
 The Petition for Rehearing is granted and the order heretofore entered by this court affirming the judgment of the lower court is set aside.
 
 
 15
 RIVES, Circuit Judge, dissents.
 
 
 16
 CAMERON, Circuit Judge.
 
 
 17
 I have concurred in the Per Curiam opinion this day filed and adopt as a special concurrence the views expressed by me in the dissenting opinion filed herein on August 23, 1955 (225 F.2d 435).
 
 
 
 [1]
 Emphasis is supplied here and in every instance where portions of quotations are emphasized unless otherwise specifically indicated
 
 
 [2]
 'Reverse, the general term, implies a changing to a contrary position, direction, order, etc.', Webster's New World Dictionary, College Edition
 
 
 [3]
 It is significant that the statutory court of three judges has functioned in carrying out the mandates of the Supreme Court. In No. 2, Briggs v. Elliott, 349 U.S. 294, 75 S.Ct. 753, remanded by the Supreme Court to the District Court for the Eastern District of South Carolina, and No. 3, Davis, et al. v. School Board of Prince Edward County, Virginia, remanded to the District Court for the Eastern District of Virginia, with instructions in each instance to admit plaintiffs to the schools from which they had been respectively excluded. The three-judge court in each instance heard the evidence and declined to order immediate admission of those litigants because of conditions then prevailing