Jesse B. HESS, Pete Prandini, Jess Allen, Ray Zozaya, Andy Carey, James Roggero, Paul Municha, R. W. Akers, Edward W. Akers, Arnold Calderwood, Reno Marchetti, Clyde McGill, Adolph Limi, Louie Limi, Antonio Azevedo, Angelo Maggenti, H. H. Costersion, Fred Sandrini, Aldo Sandrini, Carl W. Massey, Nick Agone, Joe Munis, John Lusarreta, Manuel Garcia, Lawrence H. Baldwin, and Herluff Fries, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

ANDERSON, CLAYTON & CO., a corporation; California Cotton Oil Co., a corporation; Coberly-West Company, a corporation; Producers Cotton Oil Company, a corporation; Kingsburg Cotton Oil Company, a corporation; S. A. Camp Ginning Co., a corporation; J. G. Boswell Company, a corporation; Doe One Through Doe Forty. Defendants,

Civ. No. 1708.

United States District Court
S. D. California, N. D.
May 24, 1957.

W. A. McGugin, Fresno, Cal., Walch & Griswold, by Roger R. Walch, and Lyman D. Griswold, Hanford, Cal., Vizzard, Baker & Sullivan, by James Vizzard, Bakersfield, Cal., and Allen C. Wait, Firebaugh, Cal., for plaintiffs.

Fulbright, Crooker, Freeman, Bates & Jaworski, by Leon Jaworski, and J. Bradshaw, Houston, Tex., and Coleman & McDonald, by Ray J. Coleman, and Edwin A. McDonald, Jr., Los Angeles, Cal., for defendant Anderson, Clayton & Co.

Musick, Peeler & Garrett, by Harold F. Collins and J. R. O'Malley, Los Angeles, Cal., for defendant California Cotton Oil Co.

Jack Bradley, Bakersfield, Cal., for defendant Coberly-West Co.

Wild, Christensen, Barnard & Wild, by M. K. Wild, M. Gordon Wild, and Robert Barnard, Fresno, Cal., and Docker & Docker, by Frederick W. Docker, William F. Docker, and James H. Perkins, Fresno, Cal., for defendant Producers Cotton Oil Co.

Avery, Meux & Gallagher, by Kenneth G. Avery, Fresno, Cal., for defendant Kingsburg Cotton Co.

O'Melveny & Myers, by Pierce Works, and Parker, Milliken . & Kohlmeier, by Frank W. Clark, Jr., and Charles H. Chase, Los Angeles, Cal., for defendant S. A. Camp Ginning Co.

. Whitney & La Prade, by Louis B. Whitney, Phoenix, Ariz., and James G. McCain, Corcoran, Cal., for defendant J. G. Boswell Co.

YANKWICH, Chief Judge (after stating the facts above).

The two motions, (1) to dismiss the complaint as a class action and (2) to dismiss it for failure to state a claim as to the individuals joining as plaintiffs, are interrelated. Whether the complaint before us be considered as an action by several plaintiffs on their own behalf or as representing themselves and others similarly situated, the fundamental principles of law—those relating to the practices alleged to be in violation of the anti-trust laws of the United States, from which the injuries to plaintiffs are alleged to flow—are the same. Procedurally, there is fundamental difference between stating a claim or cause of action on behalf of several persons who join as individuals and seek recovery for injuries caused to them alone and stating a claim for injury by a small group on behalf of a large class. Because the harm of which complaint is made,— whether the action be considered from one aspect or another,—is the same and stems from the interdictions contained

in the anti-trust laws, it is well to begin the discussion with a statement of some of the fundamental principles underlying antitrust legislation and jurisprudence.

## I

### The Aim of Antitrust Legislation

The Congress of the United States, in 1890, enacted the Sherman Antitrust Act.[1] The Act followed attempts by various states to deal with the problem of monopoly, which the rapid industrialization of the country following the Civil War had brought on. The trend has been characterized by a writer as "the nationalizing of business", which was very prominent in the period between 1878 and 1898. Large trusts arose: The Standard Oil Company, The American Sugar Refining Company, and the amalgamation of tinplate companies. Opposition to them began at state level, and many states instituted prosecutions under state laws before the Sherman Act became law.

In 1888 fourteen antitrust bills were introduced in the House of Representatives. In the same year Senator John Sherman introduced his first bill,

"To declare unlawful trusts and combinations in restraint of trade and production."

Senator Sherman's name was attached to the Bill, although historians state that other senators were more instrumental in the final framing of the Act than he.[2] The Act was signed by President Harrison on July 2, 1890. It remained unchanged until 1914, when the Clayton Act was adopted.[3]

The Sherman Act condemned certain practices and their results. The Clayton Act condemned the same practices in their incipiency. There have been other acts since, such as the Robinson-Patman Act, prohibiting certain discriminatory practices in commerce.[4] They are not involved in this litigation. Mr. Chief Justice Hughes has called the Sherman Act "a charter of freedom".[5]

Mr. Justice McReynolds, speaking in 1919 for an unanimous court, gave this as the aim of the Sherman Act:

"The purpose of the Sherman Act is to prohibit monopolies, contracts and combinations which probably would unduly interfere with the free exercise of their rights by those engaged, or who wish to engage, in trade and commerce—in a word to preserve the right of freedom to trade."[6]

The same aim has been stressed repeatedly since by the court. In fact, there is no break of continuity between the old and new cases in this respect.[7]

1. 15 U.S.C.A. §§ 1-7.

2. See the writer's article, Competition, Real or Soft, 1952, 14 F.R.D. 199, 201–202.

3. 15 U.S.C.A. §§ 12–13, 14–21, 22–27, 44.

4. 15 U.S.C.A. §§ 13, 13a, 13b, 21a. The Federal Trade Commission Act empowers the Commission to prohibit discriminatory practices in commerce as unfair competition and enter orders prohibiting persons engaged in interstate commerce from practicing them. 15 U.S. C.A., § 45 et seq. Under this power, monopolistic practices denounced by the Anti-Trust Law may be stopped by the Commission. Federal Trade Commission v. Morton Salt Co., 1948, 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196; Federal Trade Commission v. Rubberoid Co., 1952, 343 U.S. 470, 72 S.Ct. 800, 96 L. Ed. 1081.

5. Appalachian Coals, Inc., v. United States, 1933, 288 U.S. 344, 360, 53 S.Ct. 471, 474, 77 L.Ed. 825.

6. United States v. Colgate & Co., 1919, 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992.

7. Standard Oil Co. of New Jersey v. United States, 1911, 221 U.S. 1, 58, 31 S.Ct. 502, 55 L.Ed. 619; Ramsay Co. v. Associated Bill Posters of U. S. & Canada, 1923, 260 U.S. 501, 512, 43 S.Ct. 167, 67 L.Ed. 368; United States v. American Linseed Oil Co., 1923, 262 U.S. 371, 388, 43 S.Ct. 607, 67 L.Ed. 1035; Paramount Famous Lasky Corp. v. United States,

The Congress has provided two means for enforcing the Act through Governmental agencies. It declared certain practices a misdemeanor.[8] It also provided for a civil action in equity to enjoin them.[9]

The Congress also provided for a private civil action:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."[10]

The object of this section is to allow persons who are injured by the prohibited acts to bring civil actions for treble damages, *not as a penalty or as a means of private enrichment*, but as an aid to the enforcement of the antitrust laws. For this reason the judgment in a criminal proceeding or in a civil action instituted by the Government is made *prima facie* evidence of the existence of the condemned practices, to the same extent as persons would be bound under the doctrine of estoppel, but a consent decree is not given such effect.[11]

## II

### The Nature of the Treble-Damage Suit

The Congress, by allowing private actions, in aid of enforcement of anti-

trust policy, did not intend to allow a person representing himself or a group to bring an *unlimited* action for an unspecified amount, upon the bare allegation that a conspiracy exists. The Congress intended to confine the remedy to persons who are *actually* damaged in their business, and damaged in a measurable amount.

The Court of Appeals for the Seventh Circuit, in a noted case, made this statement:

"Injury 'in his business or property' is a prerequisite to a person's right to maintain an action for treble damages."[12]

The Court of Appeals for the Fifth Circuit has said, in effect, that the purpose of the treble damage action is not to make a private person the *vindicator* of the antitrust laws of the United States, but merely *to aid* the Government in the enforcement of these laws:

"The main purpose of those laws was to protect the public from monopolies and restraint of trade, and the private right of action for treble damages was incidental and subordinate to that main purpose. * * * The grant of a claim for treble damages to persons injured was for the purpose of multiplying the agencies which would help enforce the antitrust laws and therefore make them more effective. * * * The very foundation of the right of a private suitor to recover 'threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee' is

1930, 282 U.S. 30, 42–43, 51 S.Ct. 42, 75 L.Ed. 145; Sugar Institute, Inc., v. United States, 1936, 297 U.S. 553, 597–598, 56 S.Ct. 629, 80 L.Ed. 859; Apex Hosiery Co. v. Leader, 1940, 310 U.S. 469, 495–498, 60 S.Ct. 982, 84 L.Ed. 1311; Fashion Originators' Guild v. Federal Trade Commission, 1941, 312 U.S. 457, 465–466, 668, 61 S.Ct. 703, 85 L.Ed. 949; Associated Press v. United States, 1945, 326 U.S. 1, 12, 65 S.Ct. 1416, 89 L.Ed. 2013; Standard Oil Co. of California and Standard Stations v. United

States, 1949, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371; United States v. E. I. Du Pont De Nemours & Co., 1956, 351 U.S. 377, 385–391, 76 S.Ct. 994, 100 L.Ed. 1264.

8. 15 U.S.C.A. § 2.

9. 15 U.S.C.A. § 4.

10. 15 U.S.C.A. § 15.

11. 15 U.S.C.A. § 16.

12. Peller v. International Boxing Club, 7 Cir., 1955, 227 F.2d 593, 595.

the violation of public rights prohibited by the Act and, indeed, made criminal offenses. * * *

"Public injury alone justifying the threefold increase in damages and being an indispensable constituent of a claim for violation of the antitrust laws, *a general allegation of such injury is not sufficient. It is essential that the complaint allege facts from which it can be determined that the conduct charged to be in violation of the antitrust laws was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce.*"[13]   (Emphasis added.)

■ The Circuit Courts of Appeals have been very careful to note that the persons suing, either for themselves or on behalf of a class must show that they are of the type to be *directly* injured by the conspiracy and *not only indirectly.*

The Court of Appeals for the Ninth Circuit in sustaining a judgment on the pleadings entered by our colleague, Judge Wm. C. Mathes, in a case,[14] upon the ground that the complaint did not state a cause of action either on behalf of the persons individually or as the members of a class, made this pertinent statement:

"A conspiracy may have many purposes and objects; the conspirators may perform an almost infinite variety of acts in furtherance of the conspiracy; but, in order to state a cause of action under the antitrust laws a plaintiff must show more than that one purpose of the

conspiracy was a restraint of trade and that an act has been committed which harms him. *He must show that he is within that area of the economy which is endangered by a breakdown of competitive conditions in a particular industry. Otherwise he is not injured 'by reason' of anything forbidden in the anti-trust laws.*"[15]   (Emphasis added.)

■ All courts agree that the damages of which the section speaks are not the type of general damages that are recoverable for an ordinary tort, but rather damages actually sustained, which are susceptible of measurement. The Court of Appeals for the Ninth Circuit has so stated:

"The next issue is whether the appellant has stated a recoverable claim under the alleged conspiracy.

"Recovery in a private civil antitrust action is based upon actual damage. * * * As stated in Harrison v. Paramount Pictures, supra, [D.C.] 115 F.Supp. [312] at page 316:

" 'Injury * * * implies violation of a legal right.' * * * this plaintiff 'owns' the building, but her 'property' in it consists entirely of the right to the reversion after the expiration of the lease, plus the rights which she has retained by the leases in respect of it. There is no such thing as a conspiracy against a building, and the plaintiff's injury, if any, can only arise from a violation or impairment of such rights in the property as she has."[16]

13. Kinnear-Weed Corp. v. Humble Oil & Refining Co., 5 Cir., 1954, 214 F.2d 891, 893.   And see, the writer's opinion in Fanchon & Marco v. Paramount Pictures, D.C.Cal.1951, 100 F.Supp. 84, 88.

14. Conference of Studio Unions v. Loew's, Inc., 9 Cir., 1951, 193 F.2d 51.

15. Conference of Studio Unions v. Loew's, Inc., supra, note 14, at page 54.

16. Steiner v. 20th Century-Fox Film Corp., 9 Cir., 1956, 232 F.2d 190, 193–194. This is necessarily so because in a private action for treble damages, the right of recovery does not depend upon the mere existence of the conspiracy, but *upon the injuries resulting to the particular defendant* from it.   Foster & Kleiser Co. v. Special Site Sign Co., 9 Cir., 1936, 85 F.2d 742, 750; Suckow

In proving damage in a civil antitrust suit there are several methods of approach. One is the rule laid down in the motion picture cases in which the courts have held that where one is complaining of restrictions practiced against the exhibition of motion pictures, damages may be proved by showing the loss of receipts resulting from the operation of the restrictions.[17] It may also be done by showing the profits of theatres similarly situated, to which pictures were released earlier.[18]

When we are dealing with other commodities the rule of proof may be different. The plaintiff may show that he was deprived of a commodity, that he could have handled it and sold it, and what profit he would have made.[19] This method was used in a recent case before me in which the plaintiffs were allowed to show that their product (an automobile wax and polish) was excluded from certain gasoline stations, what other competitive products were sold to these stations, and what profit the plaintiff-manufacturer would have made if allowed to sell in competition. Another method is to show that the plaintiff suffered loss because he was compelled to sell his product below his cost of production.[20]

Whichever method is used, the defendant has the right to contest with *each* of the plaintiffs the *amount of damage*. The Mandeville case, which counsel for the plaintiffs claim to have used as a model for their complaint,[21] indicates clearly that whether there be one defendant or several, damage must be alleged in the terms of actual loss to each individual plaintiff, in a manner that is ascertainable and can be proved. In that case, the court, after stating that the issue as to what damage the plaintiffs were entitled to and whether the damage should be based upon the difference between certain prices and the prices fixed by the Secretary of Agriculture was not being decided, makes the observation that

> "Petitioner Mandeville Island Farms prayed judgment for $315,043.80; petitioner Zuckerman for $112,192.14."[22]

So it is quite evident that in a case of this character no complaint should go before a court or jury unless it pleads adequately: (1) violation of antitrust law. As to this, the allegations of the complaint must be taken as true and are, in the main, sufficient. The complaint must then show (2) that the violation affected the plaintiff and injured him in "his business or property"[23] and (3) the actual damages he suffered.

In a class action of this character, while the plaintiffs may *aggregate* the amount for which each sues, the complaint should state specifically the amount which each claims to be the actual damage suffered. This is not only in con-

Borax Mines Consolidated, Inc., v. Borax Consolidated, Ltd., 9 Cir., 1950, 185 F. 2d 196, 208; Karseal Corp. v. Richfield Oil Corp., 9 Cir., 1955, 221 F.2d 358, 362–364.

17. Bigelow v. RKO Radio Pictures, Inc., 1946, 327 U.S. 251, 262–263, 66 S.Ct. 574, 90 L.Ed. 652.

18. Fanchon & Marco v. Paramount Pictures, D.C.Cal.1951, 100 F.Supp. 84. The judgment was for the defendant, but the plaintiffs used the comparative earning method in attempting to prove damages.

19. Eastman Kodak Co. of New York v. Southern Photo Materials Co., 1927, 273 U.S. 359, 376–378, 47 S.Ct. 400, 71 L. Ed. 684.

20. Story Parchment Co. v. Patterson Parchment Co., 1931, 282 U.S. 555, 561–564, 51 S.Ct. 248, 75 L.Ed. 544.

21. Mandeville Island Farms, Inc., v. American Crystal Sugar Co., 1948, 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328.

22. Mandeville Island Farms, Inc., v. American Crystal Sugar Co., supra, note 21, 334 U.S. at page 227, 68 S.Ct. at page 1001.

23. 15 U.S.C.A. § 15.

formity with the law, but accords also with the principle that should prevail in all lawsuits, i.e., that they should *apprise* the defendant what the claim against him is. If this be true in the case of a single defendant, it is truer in the case of a group ·of defendants, such as we have here, whose relationship to the plaintiffs may not be the same.

Some defendants may have no contractual relations with the plaintiffs. How are they to know what they are required to answer or where the facts should come from? The fact that all are charged with conspiracy does not give each defendant an opportunity to answer the specific charge as to the manner in which his activities injured any particular plaintiff.

The basis of our jurisprudence is that the judge should determine litigation according to the allegations made and proved:

> "Judex debet judicare secundum allegata et probata."

This can only be done if the defendants are in a position to know how to meet a particular charge. This has bearing not only on the sufficiency of the complaint as an action by individuals, but also on its sufficiency as a class action, because even in a true class action the defendants are entitled to *know* who the members of the class are who might be expected to benefit by the judgment.

### III

### The Common Fund Theory

I believe that counsel for the plaintiffs have misconceived the theory upon which this type of class action may be brought. They have stated frankly that they thought that the small group they represent could establish (1) the price fixing and (2) the damages per ton of seed sold. Then other persons could come in and, by merely proving the amount sold at the depreciated price,[24] recover damages. But the difficulty with this line of thinking is that the courts, including the Court of Appeals for the Ninth Circuit, have held, as will appear more fully further on in the discussion, that the judgment in a class suit of this type, commonly known as the "spurious" type, *is not* binding on those who do not join before trial.[25] So nothing final could be determined in a suit by this limited number.

Only a Government judgment or decree has the effect of establishing *prima facie* violation. A judgment in a private suit, at the behest of a small number, *can* have that effect only as to those before the court.

There is no authority in any case that I am familiar with for the proposition that you can establish by a judgment the violation and the median damage per ton and then ask those not before the court to come and collect damages on the basis of proof of tonnage of seed sold.

Human cupidity makes it certain to assume that with such decree in effect *everyone* will wish to come in. But there is no power in this court to establish by a decree, at the behest of 22, the fact of violation and of median damage and then allow thousands of others to join and *claim their damage* according to the established formula.

The rules of interpleader[26] and intervention,[27] liberal though they are, allow no joinder of this character after judgment. In case a jury trial is demanded, to which the plaintiffs and the defendant are entitled, would the jury be kept in session after the "interlocutory" judgment until all other growers have joined, or would they be recalled from time to time, as new plaintiffs join, to

---

24. Story Parchment Co. v. Patterson Parchment Co., supra, note 20.

25. McGrath v. Tadayasu Abo, 9 Cir., 1951, 186 F.2d 766, 770.

26. Rule 22, F.R.C.P.

27. Rule 24, F.R.C.P.

determine the amount due them? More, any judgment declaring (1) violation of antitrust laws and (2) basic damage will not affect anyone who is not before the court at time judgment is rendered.

To sum up: Counsel's contention that an "interlocutory" judgment could be entered that would establish a violation of antitrust laws, fix a pattern of damage and then allow additional parties to come in, finds no justification in any principle of law with which I am familiar. As stated before, such an assumption would give this court the power to enter a decree that *would have greater effect upon litigants in a private lawsuit than the Congress has given to a judgment or decree in actions by the Government.* More, it disregards the fact, to be treated more fully hereinafter, that in a "spurious" class *action a separate judgment must be entered as as to each of the plaintiffs.*

## IV

### The Class Action

We now consider other reasons which stand in the way of entertaining this action as a class action.

Class actions are allowed under our Federal Rules of Civil Procedure. The Rule governing them reads:

"Rule 23. Class Actions

"(a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."[28]

██ I am of the view that *in any one of the three forms* of actions allowed, (1) the "true" form of class action, (2) the "hybrid" form or (3) the "spurious" class action, the court must be satisfied that the persons before it will *fairly insure adequate representation of all.*

In one of the oldest cases on the subject the Supreme Court, after referring to the fact that class actions are exceptions to the rule which requires that an action be instituted only on behalf or against persons who are *actually* before the court and referring to the three types of class actions long recognized in equity jurisprudence, states that it is the function of the court to insure that the persons before the court *truly* represent the rights to be adjudicated:

"In all cases where exceptions to the *general rule* are allowed, and a few are permitted to sue and defend on behalf of the many, by representation, *care must be taken that persons are brought on the record fairly representing the interest or right involved,* so that it may be

---

28. Rule 23, F.R.C.P. The principle embodied in this rule is as old as equity jurisprudence itself, as applied in the federal courts. Indeed, one of the most interesting statements of the rule, in which the nucleus of the distinction between the three types of class actions is found, is in Smith v. Swormstedt, 1854, 16 How. 288, 301–302, 14 L.Ed. 942.

And see, Supreme Tribe of Ben-Hur v. Cauble, 1921, 255 U.S. 356, 363–364, 41 S.Ct. 338, 65 L.Ed. 673; Martinez v. Maverick County Water Con. & Imp. Dist. No. 1, 5 Cir., 1955, 219 F.2d 666, 671–672. And the old Equity Rule 38 embodied most, if not all, the features of the present rule.

fully and honestly tried."[29] (Emphasis added.)

So when the makers of the Rule under discussion referred to "adequate representation" it must be assumed that they had in mind this long-established and recognized equitable principle which applied to all three kinds of class representation cases. And the courts which have had occasion to apply the rule have so held. In a leading case on the subject, the Court said that in the case of "spurious" class actions, the court *should* consider the question, and held that in determining whether there is an assurance of proper representation a representation by a small number (two jobbers) in an action allegedly brought on behalf of 900 is a question of fact to be considered by the court. The Court also ruled that, aside from any other questions, the simple matter of numerical inadequacy was sufficient to order the dismissal of the action as a class action, saying:

> "It seems to us that this is a case, which, upon the foregoing facts, falls within the first category of discretionary action. There is room for the play of discretion by the trial judge. The facts and the inferences are not free from dispute. There are numerous possibilities which are real and substantial as distinguished from conjectural or possible, from which different individuals might reach different judgments. The District Judge concluded that the plaintiffs had not shown their ability to insure adequate representation of the absent members of the class. The evidence justified Judge Igoe's conclusion. If this

question had not been presented to him first, and we were exercising our judgment, a like conclusion would be reached."[30]

The Court of Appeals for the Ninth Circuit has referred to the case just cited and has stated that the judgment in a "spurious" class case is not binding upon any persons except those who actually *become parties before judgment.* After stating that Subdivision (3) of the rule under discussion covers cases where each plaintiff has a right to recover damages for the wrong done all,

> "even though the amount of damages recoverable differs for the different plaintiffs,"[31]

they add:

> "The same principle was stated by the Seventh Circuit in Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84, 88."[32]

In another case in which the action was of the second type, called "hybrid", the Court insisted that the problem of representation is *a question of fact* to be determined by the trial court. In that case there was a fund against which all claimed. The Court held that 49 investors *should not* be allowed to bring suit on behalf of 13,000 investors who may have a claim to the fund.[33]

In a case from the Third Circuit in which an action was brought by a member of a local union, this statement occurs:

> "It is true, as the plaintiff argues that the membership of an unincorporated labor union may constitute a class on whose behalf representatives may bring a true class suit to vindicate the common rights of the

29. Smith v. Swormstedt, supra, note 28, 16 How. at page 302.

30. Weeks v. Bareco Oil Co., 7 Cir., 1941, 125 F.2d 84, 93, 94. And see, Troup v. McCart, 5 Cir., 1957, 238 F.2d 289, 294–296.

31. McGrath v. Tadayasu Abo, supra, note 25.

32. Ibid., 186 F.2d at page 770.

33. Pennsylvania Co. for Insurance on Lives and Granting Annuities v. Deckert, 3 Cir., 1941, 123 F.2d 979. And see, Farmers' Co-op. Oil Co. v. Socony-Vacuum Oil Co., Inc., 8 Cir., 1942, 133 F.2d 101, 104–105; Knowles v. War Damage Corp., 1948, 83 U.S.App.D.C. 388, 171 F.2d 15, 18.

members as such. But Federal Civil Procedure Rule 23(a), 28 U.S.C.A., provides that the representatives of the class who bring the suit must be such 'as will fairly insure the adequate representation of all.' Here the affidavits upon which the court acted make it perfectly clear that the membership of Local 103 is sharply divided on the very question involved in this case, the expulsion of the plaintiff and his associates. Indeed a majority of the members who voted on the question at a membership meeting held on January 11, 1950, voted to sustain their expulsion."[34]

Then follows a statement which has a very decisive bearing on the case before us in which *2038 persons say that they do not wish this suit continued in their behalf:*

"With a class thus *sharply divided in opinion* it would be absurd to say that the leader of one faction in the internecine struggle could adequately represent the whole membership. The finding of the district court on this point must be set aside as clearly erroneous."[35] (Emphasis added.)

The trial court having allowed the case to proceed, its Order was set aside as clearly erroneous. A later case from the Seventh Circuit does not propound a different doctrine, as contended by the plaintiffs herein. The court merely held that *in the particular instance there was assurance of adequate representation.* Significantly, however, it insisted that the judgments would have to be several as to each of the plaintiffs.[36] One other observation is in order. Rule 23 must be read with another Rule which uses similar wording.[37] Rule 23 states, as to a "spurious" class action, that it may be brought when the interests are

"several, and there *is a common question of law or fact affecting the*

---

**34.** Giordano v. Radio Corporation of America, 3 Cir., 1950, 183 F.2d 558, 560.

**35.** Giordano v. Radio Corporation of America, supra, Note 34, at page 560. The following language from a later case from the Fifth Circuit is also very appropriate:

"In this record, there is no proof to sustain the allegation that there are many others besides complainant, too numerous to make parties, having the identical status and possessing the necessary qualifications for admission to the same college and courses. Certainly there can be no such all-inclusive injunction covering all members of an alleged class without proof that the others desire to be so represented in substantial numbers or have requested plaintiff so to represent them. Such facts cannot be assumed." Board of Supervisors of Louisiana State University, etc. v. Tureaud, 5 Cir., 1955, 226 F.2d 714, 719.

**36.** Kainz v. Anheuser-Busch, Inc., 7 Cir., 1952, 194 F.2d 737, 741–742. As it is claimed that this case teaches a different doctrine than is here expounded, it is well to reproduce the following paragraph from the Opinion:

"At any rate, the law of this circuit, by virtue of Weeks v. Bareco Oil Co., supra, is that where the tort complained of by each plaintiff is the same and is claimed to have damaged each of the plaintiffs in the same manner, plaintiffs may join under Rule 20(a) or maintain the suit as a spurious class suit under Rule 23(a) (3), *though the judgments are several and no one is bound unless he is present.*" (At page 742. Emphasis added.)

A later case from the same circuit approves the principle that separate judgments must be entered:

"Here we are dealing with a spurious class action, containing common elements of fact and law, but based upon separate and individual claims growing out of the same transaction. Hughes v. Encyclopedia Britannica, 7 Cir., 199 F.2d 295; Kainz v. Anheuser-Busch, Inc., 7 Cir., 194 F.2d 737. *In such an action, separate judgments are entered 'and no one is bound unless he is present.'* Kainz v. Anheuser-Busch, Inc., 194 F. 2d at page 742." Hurd v. Illinois Bell Telephone Company, 7 Cir., 1956, 234 F.2d 942, 944. (Emphasis added.)

**37.** Rule 20, F.R.C.P.

*several rights and a common relief is sought.*"[38]

This is nothing more than "permissive joinder". The same language occurs in Rule 20, which states:

"(a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any *question of law or fact common to all of them will arise in the action.* All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. The plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

"(b) Separate Trials. The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom he asserts no claim and who asserts no claim against him, and may order separate trials or make other orders to prevent delay or prejudice."[39] (Emphasis added.) ·

■ Those who criticize the courts that have held it to be their function to determine, in advance of trial, whether there is adequate representation under Rule 23, overlook a very significant matter, i.e., that under Rule 20, in permis-

sive joinder cases, the court, in the interest of justice, may order separate trials. Ultimately, the "spurious" class action, so called, is *nothing more than permissive joinder.* And so it is quite evident that, just as under Rule 20, when there is joined a large number of parties who have only *one question of law or fact in common,* the court can spare litigants the difficulty and expense of a joint trial, so, *by parity of reasoning,* in "spurious" class action, the court can do the same, upon a showing that *there is no true representation.* This can be done by compelling the plaintiffs to (1) name all the persons in the class for whose benefit the action is brought, or (2) dismissing it as a class action as·to all except those who appear as plaintiffs.

■ As a matter of fact, I am of the view that our power under Rule 23 is even greater than under permissive joinder, because under such joinder, the judgment as· to the common question would be binding upon the parties joined, while the courts have held that in "spurious" joinder, even when the representation is adequate, the judgment is not so binding.[40]

The Court of Appeals for the Ninth Circuit has stated:

"Appellant Hinst and twenty-five other individuals brought this action for damages arising out of the loss of their employment. ·The complaint purports to have been brought on behalf of 2,000 other individuals similarly situated but, since each plaintiff's claim is individual and several, and no specific property can be affected by the action, the action is a 'spurious class suit' under Rule 23(a) (3) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Such a suit is merely a permissive joinder device in which the right. and·liability of each individual plaintiff is distinct and no member of the 'class'

---

38. Rule 23(a) (3), F.R.C.P.

39. Rule 20, F.R.C.P.

40. See case cited in notes 25 and 30.

is bound by a judgment who does not join as plaintiff or intervenor."[41]

This succinct statement sums up the basic reason for the view that the rights in a class action of the "spurious" type *are no greater than the rights under permissive joinder*. As stated by the same court in a prior case:

"We agree with the Second Circuit that the relief attained in class suits under Rule 23(a) (3) extends only to the named plaintiffs actually becoming parties before judgment. York v. Guaranty Trust Co. of New York, 2 Cir., 143 F.2d 503, 529."[42]

### Summary and Conclusion

To conclude:

The complaint in this case shows inadequacy in numbers. The 26 plaintiffs seek to recover $28,800,000 on behalf of some 8,000 growers. This it is sought to treble to an astronomic total of $86,-400,000. Two thousand and thirty-eight persons, who are clearly within the same class, have informed the court under oath that they do not desire to be represented by the plaintiffs. The action has been pending since November 14, 1956, and *no other* member of the class has sought to join as plaintiff or has intervened or interpleaded. On the contrary, four of the original plaintiffs have expressed their desire to withdraw. No counter-affidavits have been filed claiming coercion or compulsion of any of those expressing opposition.

It is also apparent that there is a variety of contracts. At least nine different types of growers and contracts have been identified in the affidavits: (1) Financed growers; (2) Non-financed growers; (3) Sharecroppers; (4) Corporations who do farming and who may be partially owned by other defendants; (5) Farmers who divide their business between various defendants; (6) In-dividuals who do farming and also have a stockholder's interest in one of the defendants; (7) Farmers who do business with the cooperative gins; (8) Persons who are inactive, but own a financial interest in partnerships engaged in the farming business; and (9) Cotton gins independently owned or operated by individuals or corporations and cooperatives and who compete for the seed of the farmer at growers level.

It appears on the face of the Complaint, and is evident from the variety of operations and contracts, that there is no uniformity in the quality of cotton seed. In view of this and of the requirement for several judgments, no single decree of this court could possibly determine a damage ratio ton-wise, that would apply to all.

An added factor also is the attempt to join the cooperatives of which the growers themselves are members. Cooperatives may well be an evil in the field of farming. But if they are, and participate in antitrust violations, they should be sued by name so that they may come in and defend, *perhaps against their own grower members*.

There is no need to analyze in detail the various types of contracts described in the affidavits and already enumerated. One observation may, however, be made: The record shows that there are many financed contracts, i.e., contracts whereby the buyer becomes the grower's partner, or joint venturer, and finances or advances the money to the grower. In such type of contract the law would recognize the right to impose conditions as to marketing that could not be imposed on independent growers.

So it is quite evident to the court that it would be a grave injustice to allow 22 persons to represent the large num-

41. Schatte v. International Alliance, etc., 9 Cir., 1950, 183 F.2d 685, 687.

42. McGrath v. Tadayasu Abo, supra, note 25, 186 F.2d at page 770. See Dickinson v. Burnham, 2 Cir., 1952, 197 F.2d 973, 979, and cases cited in note 3 of the case at last page indicated.

ber of cotton growers unless they voluntarily joined as plaintiffs.[43]

The only claimed common question involved is price fixing  But we have here as defendants a variety of buyers, ginners and processors doing everything from buying the cotton to turning it into cottonseed oil and by-products involving a great diversity of interests.

Assuming that the plaintiffs can comply with the requirement that the damage of each of them be set forth in an amended complaint, it is quite apparent on the face of this record that the 22 persons before the court do not *insure adequate representation.* A court order that would allow this case to remain *open further* until such other persons *as may be solicited* join as plaintiffs would constitute an abuse of discretion, and subject these defendants, *whose interests appear so diverse,* to unwarranted hardship.  In our judical system, a person should be summoned into court only upon the basis of a claim or a cause of action for *which he is legally answerable,* and which is stated *specifically* in the complaint.

Disregarding as untenable in law the theory that a judgment determining the criterion of damage would allow others to come in after an interlocutory judgment, thus giving a greater force to the decree than a decree in a Government criminal action or equity suit,[44] the continuance of this suit as a class action would do violence to all the ideals of fairness and justice which should prevail in American courts.

Hence the following rulings:

1. An order will be entered dismissing the complaint as to all defendants *as a class action.* The order will direct the entry of a final judgment of dismissal

"upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."[45]

The judgment shall recite, in effect, that, in the opinion of the court, the record presented by the complaint, the affidavits, depositions, and other documentary evidence shows clearly and conclusively that because of diversity of interests in the group and the numerical inadequacy of plaintiffs, *they do not and cannot* insure the adequate representation of all the growers in the Valley.

2. The complaint will also be dismissed for failure to state a claim, because it does not allege specifically the actual damage suffered by each of the plaintiffs.

However, the plaintiffs will be given 30 days in which to file an amended complaint, limiting their claim to a joint action on behalf of the named plaintiffs, and any other persons who desire to join them against the named defendants, *excluding all fictitious persons.*

The prayer for relief will be limited to the period from January 7, 1953 and will state specifically the damage claimed to have been suffered by each of the plaintiffs named.

---

**43.** The discretionary power of the court in disallowing "spurious" class actions is well stated by the Court of Appeals for the District of Columbia in Knowles v. War Damage Corp., supra, note 33, 171 F.2d at page 18:

"This type of action is spoken of as a 'spurious class action.' The members' interests may be several and not interdependent, although the remaining requisites of the true class action must be met. Their joinder is a matter of economy and efficiency on the part of courts and parties—an avoidance of a multiplicity of suits.  Courts have possessed the power to afford and have afforded this remedy long before the adoption of the new Federal Rules of Civil Procedure. The joinder was and is a matter of discretion in the trial court."

**44.** 15 U.S.C.A. § 16.

**45.** Rule 54(b), F.R.C.P.